UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **ERIK J. CARDIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action |
| | ) | No. 1:19-CV-1646 |
| **v.** | ) | |
| | ) | May 8, 2020 |
| **LEAH MARIE OLSZEWKSI,** | ) | 10:30 a.m. |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

*TRANSCRIPT OF MOTION HEARING PROCEEDINGS*
*(By Teleconference)*
*BEFORE THE HONORABLE LIAM O'GRADY,*
*UNITED STATES DISTRICT COURT JUDGE*

APPEARANCES:

For the Plaintiff:      **James S. Kurz, Esq.**
Redmon, Peyton & Braswell LLP
510 King Street
Suite 301
Alexandria, VA 22314
703-684-2000
Email: Jkurz@RPB-law.com

For the Defendant:      **Christine Nicole Walz, Esq.**
Holland & Knight LLP (DC)
800 17th Street, N.W.
Suite 1100
Washington, DC 20006
202-955-3000
Fax: 202-955-5564
Email: Christine.walz@hklaw.com

**Kevin D'Olivo, Esq.**
Holland & Knight LLP
1650 Tysons Boulevard
Suite 1700
Tysons, VA  22102
703-789-7728
Email: Kevin.dolivo@hklaw.com

APPEARANCES:   (Cont.)

For the Defendant:          **Robert Farlow, Esq.**
                            Holland & Knight LLP
                            1650 Tysons Boulevard
                            Suite 1700
                            Tysons, VA  22102
                            703-789-7728
                            Email: Robert.farlow@hklaw.com

                            **Cynthia Gierhart, Esq.**
                            Holland & Knight LLP (DC)
                            800 17th Street, N.W.
                            Suite 1100
                            Washington, DC 20006
                            202-955-3000
                            Email: Cynthia.gierhart@hklaw.com


Court Reporter:             **Scott L. Wallace, RDR, RMR, CRR**
                            Official Court Reporter
                            United States District Court
                            401 Courthouse Square
                            Alexandria, VA  2231-5798
                            703.549.4626
                            scottwallace.edva@gmail.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

<u>**MORNING SESSION, MAY 8, 2020**</u>

1

2  (10:32 a.m.)

3       (Discussion had off the record.)

4       THE COURT:  Okay.  Go ahead, Mr. Kurz.

5       MR. KURZ:  If we're ready to start, I do have one

6  disclosure.  I talked to Ms. Walz, and I wanted to make sure we

7  put it on the record.

8       Your Honor, in this case, while I'm the counsel in civil

9  matters --

10      THE COURT REPORTER:  I'm sorry, I'm sorry, counsel.

11      MR. KURZ:  Primary counsel is Tom Carter.  And I advised

12 Ms. Walz that several years ago Mr. Carter had represented a

13 member of your family, a legal matter, and that she should know

14 about that.  And I'll let her speak, if she has any particular

15 concern about it.

16      THE COURT:  Okay.

17      THE COURT REPORTER:  I'm sorry, Your Honor, have we called

18 the case?  Has it already started?  I just want to make sure that

19 I'm on the same page.

20      THE COURT:  Let's call the case and see who's here this

21 morning.  Thank you.

22      THE COURTROOM CLERK:  The Court calls case 1:19-CV-1646,

23 *Erik J. Cardin versus Leah Marie Olszewski*, for a motion hearing.

24      May I have the appearances, please, first for the

25 plaintiff.

1    MR. KURZ:  Yes.  This is James Kurz.  I represent Erik

2 Cardin.

3    MS. WALZ:  And this is Christine Walz.  I represent Ms.

4 Olszewski.

5    THE COURT:  Very well.

6    MS. BECKER:  This is Jennifer Becker.  I also represent

7 the defendant.

8    MS. GIERHART:  Cynthia Gierhart of Holland & Knight on

9 behalf of Leah Olszewski.

10    MR. D'OLIVO:  Kevin D'Olivo on behalf of the defendant,

11 also from Holland & Knight.

12    MR. CARLO:  And Robert Farlow, also on behalf of defendant

13 with Holland & Knight.

14    THE COURT:  All right.  Do we have everybody now on?  Did

15 everybody identify themselves?  All right.  Well, good morning to

16 all of you.  Why don't we go back to the, I guess conflict, if

17 that's what it is, issue.

18    Ms. Walz, have you spoken with Mr. Kurz about Mr. Carter

19 having represented my daughter, actually, in a traffic matter

20 in -- I don't know, in Arlington County, Virginia many -- I'm not

21 sure how many years ago; long enough so that it's not -- no

22 longer on my mind, but -- You know, that wasn't a pleasant

23 experience.  Do you foresee any potential conflicts there?

24    MS. WALZ:  No, Your Honor.  We've spoken, and we do not

25 have any objection or any concerns regarding that.

1           THE COURT:  I do not.  Mr. Carter and I have known each

2      other a long time, but I have probably not even seen him for, oh,

3      at least two or three years, and we have only a professional

4      relationship.

5           And so I don't have any concerns myself, but thank you

6      both for bringing it to my attention early on so that we can get

7      it resolved.

8           All right.  It's defendant's motion to dismiss.  I've read

9      the pleadings, and I've had a chance to look at the case law.

10     And as you all know, these are pretty firmly established claims

11     in the amended complaint.  I do think that D.C. law applies to

12     the defamation claims, and so I don't want to hear any argument

13     on that one.  I'll decide that on the pleadings.

14          I have questions about the timing of the testimony that

15     Ms. Olszewski gave before the Armed Services Subcommittee and

16     military personnel, and I want to understand whether that was the

17     first alleged defamatory statements, if they were all made at

18     that hearing.

19          And then it appears to me that, based on the pleadings,

20     that Chairman Byer said enough at the hearing to make it pretty

21     clear that the subject matter of the hearing was the domestic

22     abuse and the military's handling of claims of domestic abuse.

23          So -- but I'll let you both discuss that, but I'm

24     interested in identifying that.  And why don't we do them one at

25     a time and begin with the defamation, then.  And please let us

1    know each -- you may want to split up the argument and different

2    people may be talking, so let's make sure we identify ourselves

3    before we begin to speak, all right?

4         MS. WALZ:  Sure, Your Honor.

5         THE COURT:  All right.

6         MS. WALZ:  This is Christine Walz again on behalf of

7    defendant Olszewski, and I'll be handling the argument today with

8    regards to defamation but also in general.

9         THE COURT:  Okay.

10        MS. WALZ:  As we stated in our motion papers, the

11   defamation counts in the case is based entirely on statements

12   that are privileged because of the context in which they were

13   made.  The allegations before the Armed Services Committee were

14   made on September 18th, 2019 before the House Armed Services

15   Committee, a select committee on military personnel, and

16   plaintiff alleges that each of those statements are defamatory.

17        The only allegations that are alleged in the complaint are

18   all found in the Olszewski hearing testimony, both her written

19   testimony and her oral testimony.  One of the statements was made

20   only verbally, but, again, all the rest are contained in her

21   written testimony which we have attached to our papers, which the

22   Court can consider because they are referenced in the complaint.

23        Both D.C. and Virginia recognize that there's an absolute

24   privilege for testimony that's given in legislative hearings.

25   Plaintiff admits that the statements at issue were all made

1    before the Congressional subcommittee, and we don't think there's

2    any basis to dispute that the hearing was legislative.

3          As we understand it, plaintiff makes two arguments that

4    the privilege should not apply.  First, they contend that the

5    legislative privilege is qualified; not absolute, and under D.C.

6    law and again under both D.C. and Virginia law, the privilege is

7    absolute, and plaintiff's argument is a misreading of *Isle of*

8    *Wight County*, which again makes clear that the privilege is

9    absolute.

10         And second, he contends that the Court cannot address this

11   question on a motion to dismiss.  In fact, courts routinely

12   address the application of privileges on a motion to dismiss, and

13   all of the facts required to establish the application of the

14   privilege are found either on the face of the complaint, in the

15   materials that were cited in the complaint and which we've

16   attached to our motion, or on the congressional subcommittee's

17   Website, which with think the Court can take judicial notice of.

18   So, therefore, the question is properly before the Court on this

19   motion.

20         And under D.C. law, which, again, we do believe applies,

21   although we don't think it makes much of a difference in terms of

22   the outcome, we do think under the choice of law analysis that

23   D.C. law should apply, and whether a statement is privileged is

24   an element of defamation that the plaintiff has to plead and

25   prove.

1          And *Marsh versus Hollander*, which we cited, says that it's

2     appropriate for the Court to consider that question of an

3     absolute privilege on a motion to dismiss.

4          Therefore, we think the defamation count should be

5     dismissed.

6          THE COURT:  Okay.  All right.  Now, the November 11th,

7     2017 text message, is that -- I did not see that being alleged as

8     a defamatory statement.  Is that your understanding, Ms. Walz?

9     And I'll ask Mr. Kurz in a minute.

10         MS. WALZ:  It is my understanding that that is not alleged

11    to be a defamatory statement, and I don't think that that is a

12    statement that was made to a third party.

13         THE COURT:  All right.  All right, Mr. Kurz, go ahead.

14         MR. KURZ:  Well, Judge, beginning with the text statement.

15    If I understand, that was from Ms. Olszewski to Sergeant Cardin.

16    I am not aware at this time of it being published to a third

17    party.

18         Going back to the issues, you know, we obviously had

19    reached this with the understanding or the expectation that this

20    was Virginia law that applied, and that -- I did, obviously,

21    quote *Isle of Wight*.  I'm not sure, Judge, how D.C. law is going

22    to be different.  We haven't -- I can't tell you that it is.  I

23    can't tell you that it is not.  The -- I can say that, however,

24    this is an affirmative defense, and some of the rules -- under

25    the rules of this Court -- and it's something that should be

1    raised as an affirmative defense and we can address it at a later

2    time, you can see in our briefing that we rely heavily on that,

3    and I did not delve into the D.C. law at that time.

4         I can't either agree or disagree with Ms. Walz on exactly

5    what the D.C. law is because it hasn't been addressed in the

6    briefing.  What I would ask the Court to do is either deny the

7    motion with respect to Count 1, or at least give me an

8    opportunity to replead it.  I'm not sure it's going to be

9    substantially different, but I would appreciate the opportunity

10   to examine in greater detail the D.C. law.

11        Judge, the -- maybe this is the time to put in how I think

12   this matter might progress, because it in some ways is not your

13   typical lawsuit, certainly not in Federal Court.

14        I would ask the Court to deny the motion.  I sent the

15   Court a notice yesterday that the California court confirmed this

16   week that it intends to go forward on Ms. Olszewski's protected

17   motion -- protective order motion filed back in 2018 and

18   continued three times at her request, but the hearing is set for

19   May 20th, and Sergeant Cardin confirmed for me yesterday that he

20   has a ticket and he is on his way to California for that hearing.

21   I have every reason to believe it's going forward.  The -- and

22   I -- that in some way changes or may change the overall tenor in

23   this case.

24        We also have a hearing scheduled for late May in

25   Ms. Olszewski's most recent Arlington County pleading, and

1   Mr. Carter tells me that that hearing is scheduled to go forward,

2   although he believes from his discussions that the matter will be

3   dismissed, but it could easily be heard within the next two

4   weeks.

5          That would give us a more complete factual basis for

6   dealing with the overall claims here.  The Court can appreciate

7   that the real core of this case is in the relief.

8          Sergeant Cardin has been subjected to a three-year

9   campaign where Ms. Olszewski stated objectives of having the Air

10  Force court marshal him.  There have obviously been various

11  consequences of this, and his principle objective is to put an

12  end to it.

13         And if it's not the defamation claim, I think the real

14  heart of the case is the malicious prosecution.  What I would

15  suggest is that -- after the Court's ruling today, assuming that

16  the case goes forward, as I believe it should, that we might

17  amend the complaint to reflect whatever the courts in California

18  and Arlington decide in the next two weeks.

19         At that point, it might be appropriate to refer this case

20  to Judge Anderson for some kind of mediation.  The -- and it just

21  seems that these are claims that -- I mean, one of the questions

22  we actually have is what does Ms. Olszewski plan to do in the

23  event that the things -- if the Court rules against her.  Is she

24  going to comply with that?  She's filed 13 times so far.  She

25  hasn't won yet, yet she continues to torment Sergeant Cardin.

1        The -- my past experience with Judge Anderson has been

2    very good, as he's handled these difficult matters.  I would

3    suggest that we certainly have that as a stopping point in this

4    progress in this case.

5        Having said that, I think I've said my point on the

6    defamation.  I would ask the Court to deny the motion to dismiss.

7    I think we can then consider from our end more of the D.C. law.

8    And again, if it turns out that it's -- that it is no different,

9    and I can't tell you one way or another at this time, the -- I

10   can come back and tell the Court that, and if the Court needs to

11   rule one way or the other on the motion, it could do so.

12       Having said that, I still think that the core of this case

13   is the malicious prosecution claim backed up by the tortious

14   interference, and the bases for those claims is much broader than

15   the statements made before Representative Byer's subcommittee.

16   Having said that, I turn it back to the Court and Ms. Walz.

17       THE COURT:  Okay.  Thank you.  Ms. Walz, do you want to

18   reply?

19       MR. KURZ:  Yes, Your Honor.  There are so many things that

20   are wrong with what plaintiff's counsel just said I'm having a

21   hard time knowing where to start.  I don't want to -- plaintiff's

22   counsel may be misinformed by his client about who has requested

23   continuances in the California matter, but it certainly wasn't

24   Ms.  Olszewski.

25       In fact, in some instances -- in some instances it was the

1    Court, and in other instances it was his client.  My

2    understanding is that that hearing is about a permanent

3    restraining order -- or permanent protective order when, in fact,

4    a temporary restraining order has already been issued by the

5    California court.

6         Again, my client is prepared to go forward.  We are not

7    representing her in that case, nor do we think that that case has

8    any real relevance to the claims that plaintiff brings here.

9         Again, D.C. law and Virginia law are both clear about the

10   absolute privilege, and that has been very clear from our motion

11   to dismiss.  Plaintiff has had every opportunity to respond based

12   on that.  His decision not to was a choice.  And, regardless, it

13   does not impact the outcome of the case because he cannot replead

14   the defamation case in order to -- he cannot replead anyway.

15   That would allow him to prevail, his client to prevail.

16        Further, I'm looking at the relief requested because I

17   understand that that {indiscernible} -- that plaintiff counsel

18   wants to speak about, and much of it appears to be

19   unconstitutional in terms of seeking an injunction that would bar

20   my client from making any public statements about -- that are

21   truthful about his client.

22        So, I don't think there's any reason to delay ruling today

23   or when the Court is ready.  I don't think that plaintiff should

24   be given an opportunity to replead.  And again, the California

25   matter does not impact where this case should be going.

1          THE COURT:  Let's move on to the tortious interference

2     claim.  And perhaps -- as I said, I read the pleadings.

3          Mr. Kurz, let me hear from you first so I understand, and

4     then I'll let Ms. Walz respond.  I'm a little confused as to

5     whether the interference involves the Booz Allen employment or

6     the Syracuse University MBA program.  And given the timing of the

7     different statements, meaning that a statement I guess was made

8     in September of 2019 and he was terminated from Booz Allen in

9     December 2018 and hired, I guess, in several months prior to

10    that, what -- focus me in on what the business interference is,

11    please.

12         MR. KURZ:  Well, it goes back to the series of complaints

13    that she has filed.  And, again, my allegations are that her

14    multiple complaints are specious.

15         What happens is she files for the protective orders and

16    then she files for criminal -- she makes criminal charges.

17    Sergeant Cardin, you know, turned himself in.  He's arrested.  He

18    was incarcerated for several days.

19         The consequence of that with the continued filings is that

20    it imperils his ability to work, specifically that he came to

21    the -- he retired from the Air Force with a top secret clearance,

22    and when he -- when these claims are made and they linger, what

23    happens in the JPAS database is he's flagged and the clearance is

24    either withdrawn or he's disqualified.

25         And, you know, in the Booz Allen situation, he's working

1    for them, and then what happens is, you know, he has no

2    clearance, and he can't continue to work for them.  And it goes

3    beyond Booz Allen.  His principle and most lucrative business

4    opportunities are in the intelligence community associated with

5    the defense contractors in this area.  Understandably, he cannot

6    be employed by them as long as this persists.

7         So that's where it comes in.  She's made the claims.

8    She's made them repeatedly -- I have in front of me the graph

9    that shows 13 times -- and the consequence of that is that it has

10   compromised his top secret clearance which is -- affects his

11   employment, and it's a direct connection.

12        Judge, people in this area understand it, but people

13   elsewhere may not.  But it's not -- not only is it direct, but

14   Ms. Olszewski is sophisticated enough through her military

15   connections and knows how these things work.

16        The claims that we've made, obviously, is that it's

17   entirely malicious.  I think it comes through in the claim that

18   she determined where he was working, she determined that he came

19   to Washington to work in the defense establishment, and

20   continuing her claims would have the consequence of doing exactly

21   what happened.  It would compromise his top secret clearance and

22   make him unemployable.  So that's the point of the tortious

23   interference.

24        I think if you go through the business relationship with

25   Booz Allen -- and certainly not only with Booz Allen but his

1  ability to be employed based on -- with the top secret clearance,

2  there certainly is an economic benefit to it.  She knew of it,

3  knew of his plans to come back here and determined that he was,

4  in fact, working in this area, and her conduct was intentional,

5  and it would have the consequences that she intended.  And under

6  the continuing elements, there was clearly damage to the

7  plaintiff.  We're talking about an at-will contract here.  Her

8  continual and repeated claims, they are an improper method, and

9  it just bristles with malice.

10       So, I think in that case, Judge, we have certainly met all

11  of the requirements for tortious interference under Virginia law.

12  And, you know, they may argue that D.C. law applies to

13  defamation, there shouldn't be any question that Virginia law

14  covers the malicious prosecution and the tortious interference

15  claims.

16       THE COURT:  Okay.  All right.  Thank you.  All right,

17  Ms. Walz.

18       MS. WALZ:  Yes, Your Honor.  In order to survive a motion

19  to dismiss, the plaintiff has to allege sufficient facts to state

20  a claim that relief is plausible.  They're not entitled to just

21  jump to legal conclusions and have the Court accept those legal

22  conclusions, which is exactly what they're doing here.

23       The attenuated chain of inferences that are required to

24  credit plaintiff's theory are wholly insufficient.  The

25  complaint -- the amended complaint is devoid of any specific

1    facts that would establish that Ms. Olszewski directly or

2    indirectly accessed the JPAS database, that she knew of his --

3    specifically knew of Mr. Cardin's employment with Booz Allen,

4    which even listening to plaintiff's counsel today, I don't hear

5    him to be saying that she had specific knowledge of the

6    employment, nor did she, nor that she took any specific action to

7    raise red flags in the JPAS database.  It appears from

8    plaintiff's counsel's argument that he's arguing that making a

9    claim for a protective order is sufficient to establish a basis

10   for an element of tortious interference.  We don't think that

11   that can, in fact, be a basis for a tortious interference claim

12   because that's not an improper method, which is required under

13   Virginia law, and that's *Perk versus Vector Resources Group.*  And

14   so this claim also fails because it fails to plausibly state a

15   claim for tortious interference.

16        THE COURT:  All right.

17        MR. KURZ:  Judge, if I may respond to that.

18        THE COURT:  Go ahead, Mr. Kurz.

19        MR. KURZ:  There's also multiple police reports.  It's not

20   a single shot at a protective order.  I have 13 things that she

21   has done in filing and pursuing claims with the Air Force, the

22   secretary of the Air Force, the Office of Special Investigations,

23   protective orders in three different jurisdictions, criminal

24   claims in -- certainly in three different Virginia jurisdictions,

25   and police reports out in California.  She's out of control, and

1   I think the Court can take a look at the entirety of what she's

2   done here and say that, you know, she knew what she was doing, it

3   was intentional, and she intended the consequences here.

4        With respect to JPAS, she doesn't have to get into JPAS

5   and change it, but she does have the knowledge that if she makes

6   a series of claims, that that will happen, and that will have the

7   consequence that she seeks.  What we've alleged is that she

8   certainly had knowledge, she had the ability to get into the

9   database, and she certainly had the knowledge or the ability to

10  determine where he was working, and we believe she knew exactly

11  where he was and what he was doing, and it was all part of her

12  campaign, which she's been very clear about.  She wants him court

13  marshaled, and it's not an attenuated argument that she wants to

14  destroy him.  And part of that is interfering with his employment

15  with Booz Allen and, in fact, his employment in the entire

16  defense community.  I think it more than covers the basis for

17  tortious interference.

18       THE COURT:  All right.  Thank you.  Ms. Walz, the

19  malicious prosecution.

20       MS. WALZ:  Yes, Your Honor.  On malicious prosecution,

21  tort is favored and has heightened pleading standards to prevent

22  a fear of reprisal under exactly these circumstances, and Mr.

23  Cardin fails to meet these standards.

24       At most, he alleges that Ms. Olszewski omitted facts about

25  the status of other protective orders when seeking an additional

1    protective order against Mr. Cardin.  But, again, we dispute that

2    fact, but accepting it as true, the status of other

3    jurisdictions's determinations about the need for protective

4    orders does not establish a lack of probable cause for seeking a

5    protective order, which is a required element of any malicious

6    prosecution claim.  So, therefore, again he fails to state a

7    claim here.

8           And again, I think, when you look at how the state court

9    system and local court systems are set up, this is a layperson

10   who is seeking to protect herself and trying to understand the

11   court system in the process, and so there's no effort to destroy

12   Mr. Cardin, there's an effort to protect herself.

13          And with the patchwork of how our state court systems and

14   local systems work, she is simply trying to avail herself of the

15   court system and the police system in order to protect herself.

16   So, again, we think this fails to state a claim for malicious

17   prosecution.

18          THE COURT:  Okay.  All right, Mr. Kurz.  I think, having

19   listened to you this morning, you're focused on the Alexandria

20   stalking charge, but also, perhaps going back to the complaints

21   to the Air Force and to the family hearing, where is the focus of

22   the malicious prosecution claim, or is it as, perhaps, as broad

23   as you just identified?

24          MR. KURZ:  Oh, I think there are several examples here,

25   Judge.  Certainly the Alexandria stalking claim, which in this

1   case led to his incarceration for five days; you know, her most

2   recent claim in Arlington County, but I appreciate that that

3   hasn't yet been resolved; the -- I would go back to the claims

4   she made in California, which the prosecutors rejected, and I

5   would go back to the -- after that to the her campaign with the

6   Air Force.  I mean, she's certainly attempting to have him court

7   marshaled, and she's gone through multiple steps in the Air Force

8   attempting to get that.

9        This isn't a situation of Ms. Olszewski trying to protect

10  herself.  I mean, you go back to the text that she sent in

11  November of 2017.  I mean, this isn't telling Sergeant Cardin go

12  away.  I mean, he's trying to get as far away from her as he can.

13  She is telling him, I'm going to destroy you, and right down

14  through the Air Force, through the District Attorney, turning to

15  his MBA programs, across the board at every point.  So I've got

16  several prosecutions that she's initiated that have all turned

17  against her, and the -- I believe I can come back in a few weeks

18  and tell you the same thing happened in Arlington County.  One of

19  the points that we made in the brief, Judge, when she pursued the

20  Alexandria stalking charge, she pursued it criminally and then

21  she pursued a protective order.  She had a trial.  The general

22  district court, you know, rejected it, and then when she turned

23  around to appeal it to the circuit court, the -- I think she came

24  up on November 1st, and her accountant [sic] said she withdrawals

25  the complaint, not telling the Court that the day before she

1   filed yet another criminal case against Sergeant Cardin, this

2   time in Arlington.  She doesn't get away with one jurisdiction,

3   she simply goes to another.

4       So, to answer your question, there are multiple examples,

5   Arlington being the latest, but certainly starting with

6   California, with Alexandria, and then the entirety of the

7   situation where she's seeking to have Sergeant Cardin court

8   marshaled by the Air Force.  And I point out that at every

9   juncture it has turned out badly for her.  So, when I go back

10  through the elements of malicious prosecution in Virginia, I

11  think we touch on all of them, Judge.

12      THE COURT:  All right.  Thank you.  Ms. Walz, do you want

13  to reply?

14      MS. WALZ:  Yes, Your Honor.  Again, we -- it appears that

15  we're far outside of the four corners of plaintiff's complaint,

16  but, nonetheless, certainly with regards to any military action,

17  as we stated in our reply, Mr. Cardin has suffered no harm from

18  any of the complaints that were legal investigations because none

19  of those resulted in prosecutions, and plaintiff does not plead

20  that he had any special injury, as he's required to.

21      In fact, the complaint makes clear that Mr. Cardin retired

22  from the Air Force as planned with an honorable discharge and

23  full benefits.

24      Further, with regards to these other claims, again the

25  question is, was there probable cause for making charges, and, in

```
1    fact, in all instances there were and plaintiff has failed to

2    allege that there was not.  Nothing that he has alleged would

3    rise to that level.

4         THE COURT:  Well, okay.  I don't need to hear argument on

5    the anti-SLAPP statute.  It's largely consistent with the law in

6    the defamation claims.

7         Here's what we're going to do.  I'm going to allow Mr.

8    Kurz to file a second amended complaint.  And, unfortunately, I

9    can't wait to see what happens in California or Arlington, if

10   those cases are continued again, but hopefully maybe they will be

11   resolved, and, as a result, they will be that further

12   information.

13        The tortious interference and malicious prosecution claims

14   I think now have been brought more into focus by the pleadings

15   and our arguments heard today, and Mr. Kurz should consider those

16   in repleading Counts 2 and counts 3 to focus on some of the

17   deficiencies in the -- in those two counts.

18        Count 1, I understand that defamation is an affirmative

19   defense.  On the other hand, Mr. Kurz, you have to look closely

20   at whether you have a good faith basis to move forward with the

21   defamation claim if it is, in fact, congressional testimony, and

22   there appears to be adequate support that it was given at a

23   hearing with a legislative purpose, and only move forward with

24   that Count 1 in any repleading if you think that it will survive

25   the affirmative defense.  Otherwise, we're just wasting all of
```

1   our time, and the focus really should be on the remaining two

2   counts.  This -- I understand both parties' frustrations.  It's

3   quite clear that Mr. Cardin is denying the allegations that

4   Ms. Olszewski has brought against him.  In so many of these

5   jurisdictions the courts have looked at the he said, she said, no

6   other evidence being present, and essentially throwing up their

7   hands and said I'm not going to move forward on the prosecutions

8   of these cases or, perhaps, continue a temporary restraining

9   order, protective order, and turn it into a permanent protective

10  order because there isn't sufficient evidence, but that is the

11  fairly likely outcome of further proceedings, but I'll certainly

12  wait to see where that goes.

13       So what that leaves is the parties in a position where

14  Mr. Cardin has filed this lawsuit obviously to try and stop

15  further prosecutions.  And, Ms. Walz, you mentioned some of the

16  relief sought, that that is squarely up against First Amendment

17  freedoms, but I would think that both parties would be interested

18  in the resolution of this matter because it has been going on for

19  three years, and the -- I think Ms. Olszewski has had a full

20  opportunity to make her positions known, and I'm not sure where

21  else she could turn, if she wanted to continue on this front.

22       And so I would hope that there would -- it would be

23  possible to resolve this case.  And, as Mr. Kurz said, you know,

24  Judge Anderson is the best mediator in the courthouse, and I

25  think it would be very beneficial to have a mediation with Judge

1    Anderson.  After June 10th, I'm going to order you to contact

2    his -- I'm going to order you to contact his chambers and be in

3    next week with available dates after June 10th so that he can

4    attempt to resolve this before the litigation moves any further,

5    because it's quite clear that resolution is likely to be made

6    outside of the confines of the complaint.  And perhaps there's --

7    the parties can work together on a way to resolve this short of

8    protracted litigation.

9         And so I will direct you all to call Judge Anderson's

10   chambers next week and set up a date.  Mr. Kurz, I'll give you 45

11   days to file a second amended complaint.  I hope that will give

12   you the opportunity to get in and see Judge Anderson before that

13   is necessary.  And if you advise me as to what date you have with

14   Judge Anderson, if it's relatively close to that 45 days, I'll

15   give you a little additional time so that you can try to mediate

16   the case before the amended, second amended complaint needs to be

17   filed.  And I hope that you can resolve it, and if you can't,

18   then we'll move forward.

19        All right.  Is there anything else?

20        MR. KURZ:  Thank you.  Judge O'Grady, I'll talk to Ms.

21   Walz, and we'll contact Judge Anderson's chambers, set up a -- at

22   least, if everyone is willing, set up a mediation date with him,

23   and we'll go forward, and we will keep you abreast of the

24   developments in the case.

25        THE COURT:  Okay.  All right.  Thank you.  Anything else

```
 1    we need to talk about this morning?

 2          MR. KURZ:  I don't believe so, Judge.

 3          MS. WALZ:  Nothing, Your Honor.

 4          THE COURT:  All right.  Well, Ms. Walz, I hope that you're

 5    safe out there in New York City.  I have lots of friends and

 6    relatives, and it's been a really terrible time there, and so I

 7    hope that you've got better days ahead up there, and I wish you

 8    all -- stay safe wherever we all are, and we'll talk to you all

 9    soon.

10          MR. KURZ:  Thank you.

11          MS. WALZ:  Thank you, Your Honor.

12          THE COURT:  All right.  Bye-bye.

13          (Proceedings adjourned at 11:25 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25
```

1

## C E R T I F I C A T E

2

3              I, Scott L. Wallace, RDR-CRR, certify that
    the foregoing is a correct transcript from the record of
4    proceedings in the above-entitled matter.

5

       /s/ Scott L. Wallace                    5/28/20
6      ---------------------------        ----------------
        **Scott L. Wallace, RDR, CRR**            **Date**
7        **Official Court Reporter**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25