IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ERIK J. CARDIN, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>LEAH MARIE OLSZEWSKI, )<br>)<br>*Defendant*. )<br>) | Civil Action No. 1:19-cv-1646<br>Hon. Liam O'Grady |

## ORDER

Before the Court is Defendant Leah Marie Olszewski's Motion to Dismiss Counts I and III of Second Amended Complaint. Dkt. 28. The matter is fully briefed, and the Court dispensed with oral argument as it would not aid in the decisional process.

### I. BACKGROUND

Plaintiff Erik J. Cardin ("Plaintiff" or "SMSgt. (Ret.) Cardin") brought the first complaint in this action on December 31, 2019 (Dkt. 1), and amended his complaint on March 20, 2020 (Dkt. 13). After a telephonic hearing for Defendant's first motion to dismiss and an unsuccessful settlement conference, Plaintiff filed a three-count Second Amended Complaint ("SAC") with leave of Court on June 29, 2020. Defendant responded to Count II of the SAC, Malicious Prosecution for Criminal Claims in Virginia, with an answer and a counterclaim. Defendant now moves to dismiss Count I: Malicious Prosecution for Claims to Air Force OSI, and Count III: Tortious Interference with Business Expectancy.

Plaintiff is a retired Senior Master Sergeant in the United States Air Force ("SMSgt. (Ret.)"). He and Defendant had a romantic relationship that began in Florida in 2016 when Plaintiff was stationed at Hurlburt Field, Florida. They connected via Tinder, an online dating application. In August 2016, SMSgt. (Ret.) Cardin relocated to Travis Air Force Base in northern California, and Defendant followed him there. The two lived together in a rented house in Vacaville, California, for six months from April to October 2017.

The couple often engaged in loud arguments, and Ms. Olszewski has made public statements about severe emotional and physical abuse against her. On October 11, 2017, SMSgt. (Ret.) Cardin moved out and left the relationship. For one month thereafter, Ms. Olszewski asked him to return to the relationship and to marry her. Dkt. 34 at 5; SAC ¶ 15. When he returned on November 11 to retrieve his things from the house, he notified Defendant by text message, and arranged for several Air Force colleagues and local police to witness the event. Also on November 11, 2019, Ms. Olszewski texted SMSgt. (Ret.) Cardin the following:

> Now im going to support the DA so youll end up with midemeanor
>
> and no guns the rest of ur days.
>
> And im going to file with the air force.
>
> So osi and jag will know. And youll be
> Reprimanded. This is what u asked for
> By not being capable of being a man
> And a decent human being
>
> And u can forget unc and Syracuse

SAC ¶ 18.

Since November 2017, Ms. Olszewski has filed multiple reports and claims. Such filings have been in California, Florida, and Virginia. In California, Defendant's claims include two

police reports regarding the October 11, 2017 dispute between the Parties. The first was contemporaneous with the dispute on October 11, from which the Vacaville, California police questioned Plaintiff and released him – the County District Attorney did not pursue Olsewski's claims. On November 30, 2017, Defendant filed a second police report regarding the October 11 events. She submitted an altered story from her initial report, and the district attorney, again, took no action against Plaintiff. *Id.* ¶ 22.

Defendant also brought claims to the Air Force and she threatened to pursue a court martial if Plaintiff did not return to the relationship. On November 17, 2017, Defendant filed her first complaint with the Air Force through its Family Advocacy Program. After an investigation and two hearings, December 19, 2017 and January 25, 2018, the Central Registry Board at Travis AFB concluded there was no basis for the physical and emotional abuse claims against SMSgt. (Ret.) Cardin. Plaintiff was reprimanded for threats he made in a screaming match with Defendant that she recorded. Investigators, however, continued reviewing the evidence in an inverse light: for Olsewski's potential emotional abuse of Plaintiff. They found a basis for claims against her and "she is currently banned from occupying jobs on Air Force Bases working with or near children." *Id.* ¶ 27.

Defendant continued with complaints against Plaintiff, first via Rep. John Garamendi, the Congressional representative for the Third District of California. That was referred back to the Air Force where it was determined that the prior investigations had been proper and still stood. On March 27, 2018, Ms. Olszewski wrote to the Secretary of the Air Force alleging habitual domestic abuse by SMSgt. (Ret.) Cardin – again, the Air Force found no wrongdoing in prior conduct or investigations. SAC ¶ 33. Defendant escalated her claims against Plaintiff on April 13, 2018, when she reported to the Air Force Office of Special Investigations ("OSI") that she

was pregnant at the time Plaintiff moved out of their shared house in October 2017, and that he physically assaulted her, kicking her in the stomach and causing a miscarriage. This was the first mention of a past pregnancy which Plaintiff maintains never existed. The OSI opened an investigation based on the serious allegation of assault and "killing an unborn child." *Id.* ¶ 36. This suspended Plaintiff's pending retirement from the Air Force and created a profile for SMSgt. (Ret.) Cardin in the National Crime Information Center ("NCIC") Database. The Air Force investigations finally ended after the OSI closed the investigation on August 13, 2018, and the Travis AFB Staff Judge Advocate determined there was insufficient evidence to charge Plaintiff with any crime. SMSgt. (Ret.) Cardin retired from the Air Force with an Honorable Discharge and full benefits.

Ms. Olszewski was living in Santa Rosa County, Florida in August 2018, where she filed for a Protective Order against Plaintiff based on the October 2017 police report in Vacaville. After a full evidentiary hearing, the petition was denied. Defendant then filed for a Protective Order in Solano County, California, claiming she lived there but still residing in Florida based on the home address she provided. Plaintiff was present with counsel at a hearing for this petition on October 12, 2018, where Olsewski appeared without counsel and was unprepared to proceed – the hearing was continued until February 2019, and again until May 2019 for a full trial. In May, proceedings were continued yet again because Defendant had signed a sworn affidavit before a Virginia Magistrate Judge alleging SMSgt. (Ret.) Cardin was stalking her.

Per his plans, Plaintiff moved to the Washington, DC area after retiring from the Air Force. He sought employment and an MBA degree. He applied to Syracuse University and the University of North Carolina for his MBA, and began his MBA studies at Syracuse in July

4

2018.[1] In December 2018, Booz Allen Hamilton hired Plaintiff in a position that required his Top Secret security clearance and paid an annual salary of $102,900.00. SAC ¶ 52. The job was located at the Pentagon, and SMSgt. (Ret.) Cardin rented an apartment near the Huntington Metro station in Alexandria, Virginia. This employment would have been recorded in the military's Joint Personnel Adjudication System ("JPAS") non-public database that tracks security clearance statuses. Plaintiff shared his plans to move to DC and to pursue his MBA with Defendant in 2017.

Defendant left Florida and also moved to Virginia, where she claimed she saw Plaintiff's truck drive by in Alexandria on April 30, 2019. This led to new stalking claims with the Alexandria Police Department, but the claims did not lead to any charges. Shortly thereafter on May 7, 2019, Ms. Olszewski appeared before and made a sworn statement to a Virginia Magistrate Judge in Fairfax County, again seeking a Protective Order based on stalking claims. This time, the Magistrate Judge noted that the California Protective Order was still pending, though Ms. Olszewski did not explain the reason for the continuances. Supposedly without knowledge of Defendant's other failed attempts, and without notice to Plaintiff of the appearance before the Magistrate Judge, the Temporary Protective Order and warrant for SMSgt. (Ret.) Cardin's arrest both issued. *Id.* ¶¶ 61-62. He turned himself into the Alexandria Police and spent five days in custody. The prosecution filed a *Nolle Prosequi* dismissing the charges at a hearing on June 11, 2019. Defendant did not drop her civil claims, however, and there was another hearing on July 10, 2019, when the court dismissed the matter. Ms. Olszewski filed an appeal, which she later withdrew on November 1, 2019.

---

[1] Presumably his MBA requirements can be completed while he continues to reside in the DC area.

Just before withdrawing her appeal of the Virginia General District Court decision, Ms. Olszewski swore out a criminal complaint against Plaintiff, this time in Arlington, for harassment—contacting Defendant's employer—and violation of the 2017 Solano County, California protective order. Defendant filed this on October 31, 2019, but Plaintiff was not notified the next day at the appeal hearing. The NCIC database profile Plaintiff alleges was a "practical suspension" of his security clearance, and with the uncertainty surrounding his clearance, he was terminated from the Booz Allen position. SMSgt. (Ret.) Cardin was unable to find comparable employment in the D.C. area, and moved to Maine in June 2019 where he worked at a lower-salary job that did not require a security clearance.

The criminal complaint in Arlington was Ms. Olszewski's fifteenth filing. Because of the complaint, the FBI went to SMSgt. (Ret.) Cardin's home in Maine in February 2020. He then returned to Virginia and turned himself in to the Arlington Police. He was released on his own recognizance to return for trial in March 2020, which was then continued to May 2020. SAC ¶ 74. Once before the Court, the prosecution entered another *Nolle Prosequi* in Plaintiff's favor.

In October 2019, Ms. Olszewski testified at a Congressional Committee hearing through both written and oral statements, resulting in national public media coverage including ABC News, National Public Radio, and an October 23, 2019 feature in *The Huffington Post*, which was updated on December 14, 2019. Dkt. 34 at 2 n.1.

Plaintiff is set to complete his MBA program at Syracuse in December 2020. This is despite Defendant's formal statements to Syracuse about Plaintiff's alleged abuse and assault as well as a formal Title IX complaint against him. Syracuse investigated the complaints, found them to be insufficient under Title IX, and dismissed them. The Petition for a Protective Order

in Solano County, California is still outstanding. As of the time of the SAC, Plaintiff is unemployed.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief so as to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation omitted). "Rule 8(a)'s relatively low notice-pleading[] muster" does not require detailed factual allegations, but it does demand that a plaintiff provide more than mere labels and conclusory statements that the plaintiff is entitled to relief. *Smith v. Clark/Smoot/ Russell, AJV*, 796 F.3d 424, 433 (4th Cir. 2015); *see also Twombly*, 550 U.S. at 555. "'In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) ... [a court] must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" *Monroe v. City of Charlotesville* [sic], *Va.*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir.2009) (internal quotation omitted)).

## III. DISCUSSION

### A. <u>Count I: Malicious Prosecution for Air Force OSI Complaint</u>

The Parties briefed this malicious prosecution issue, and thus crafted their legal arguments, under the substantive law of the state of Virginia. The Court exercises diversity jurisdiction over this claim and, therefore, applies Virginia's choice of law doctrine. The *"lex*

7

*loci delicti*, or place of the wrong, standard" governs as to all matters related to the basis of the claim itself. *Jones v. R.S. Jones and Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993); *see Maryland v. Coard*, 9 S.E.2d 454, 458 (Va. 1940) (quoting 5 R.C.L. 917 (1914)). Plaintiff alleges that "[t]he claims Ms. Olszewski made to the Air Force OSI were investigated, a comprehensive Report written, and then the claims were dismissed by the Air Force SJA." SAC ¶ 87. This investigation and ultimate dismissal is the basis of the claim in Count I.

To state a claim for malicious prosecution in Virginia, "[t]he plaintiff must allege and prove that: (1) the prosecution was set on foot by the defendant and was terminated in a manner not unfavorable to the plaintiff; (2) it was instituted or procured by the cooperation of the defendant; (3) it was without probable cause; and (4) it was malicious." *Ayyildiz v. Kidd*, 266 S.E.2d 108, 110 (Va. 1980); *see also Lewis v. Kei*, 708 S.E.2d 884, 889 (Va. 2011) ("[T]he plaintiff must prove four elements: that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff.").

In *Ayyildiz*, the Supreme Court of Virginia adopted the English common law view—a minority view in the United States—that "the malicious prosecution doctrine is not extended to a civil proceeding, even though this proceeding is instituted for an improper purpose and without probable cause, unless there is an arrest of the defendant in that civil action, seizure of his property, or some other special injury to him." *Ayyildiz*, 266 S.E.2d at 111. "Special injury" in this context is a special loss or unusual hardship resulting from the malicious prosecution that would not typically result from the relevant action. *Id.* at 111-12. While *Ayyildiz* was about an underlying medical malpractice claim, other underlying civil proceedings have been held to the same arrest, seizure, or special injury requirement. In *Ely v. Whitlock*, for instance, the

8

Whitlocks argued unsuccessfully for a lower pleading standard due to the "quasi-criminal" nature of the underlying proceedings. 385 S.E.2d 893, 896 (Va. 1989). There the malicious prosecution claim was based on disciplinary proceedings; but special injury was absent, the court said, because "[a]nyone whose livelihood is threatened by such a proceeding would necessarily feel some degree of mental anguish." *Id.* Put another way, "[t]he special injury restriction excludes 'the kind of secondary consequences that are a common and often unavoidable burden on defendants in all similar causes.'" *Prescott v. Wade*, No. 4:12CV126, 2013 WL 1352168, at *14 (E.D. Va. Apr. 2, 2013) ((quoting *Ayyildiz*, 266 S.E.2d at 111) (internal citation omitted)).

The Court disagrees with the Parties' application of Virginia's substantive law in this instance. As the claim is based on the Air Force OSI investigation and ultimate denial, the circumstances of that time period determine the prima facie case. The application of California law to this malicious prosecution claim is significant because California does not follow the minority English rule, as Virginia does, and there is no "special injury" requirement, regardless of the characterization of the underlying "prosecution." *See Engel v. CBS Inc.*, 981 F.2d 1076, 1078 (9th Cir. 1992) ("New York imposes a special injury requirement in malicious prosecution cases . . . Under California law, there is no such special injury requirement."); *see also Siebel v. Mittlesteadt*, 41 Cal.4th 735, 740 (2007) (stating the basic elements in the prima facie case for malicious prosecution along with the observation, "the malicious commencement of a civil proceeding is actionable" because of its significant adverse effects on the administration of justice).

Ms. Olszewski's main argument is that the OSI complaint and subsequent investigation were civil in nature and subject to the special injury requirement in Virginia. This point is not relevant under California law and does not carry any weight as to the instant motion. Aside from

9

disputing the special injury requirement, Plaintiff contends that the Air Force OSI complaint followed a slew of unsuccessful claims against SMSgt. (Ret.) Cardin, and the OSI had no choice but to investigate because the seriousness of the new allegation: "killing an unborn child." SAC ¶ 36; Dkt. 34 at 14. This shows, Plaintiff says, that the allegations were unfounded and without probable cause.

Here, Count I plausibly states a claim for malicious prosecution resulting from the OSI investigation. At the time of the investigation, and until the OSI matter was closed, Plaintiff was stationed at Travis AFB in Fairfield, California. Because OSI is headquartered in Quantico, Virginia, there is some argument to be made that the investigation occurred in Virginia. But Plaintiff lived and served in California when he was the subject of the investigation, and the injury associated with the alleged malicious prosecution would have been—at least in large part—in California. Furthermore, the Air Force OSI submitted its final report to the Staff Judge Advocate at Travis AFB in California for the final determination that there was insufficient evidence to charge Plaintiff with any crime. With that determination, the matter was closed in a proceeding in California.

There are several arguments to be made regarding the OSI investigation as a criminal prosecution rather than a civil proceeding, as the Air Force OSI is a law enforcement division. Regardless, California's substantive law applies in this instance, and there would be no additional burden on the plaintiff even if the underlying proceeding were purely civil. In California, "'when the litigation is groundless and motivated by malice the balance tips in favor of the policy of redressing the individual harm inflicted by that litigation.'" *Id.* (emphasis omitted) (quoting *Crowley v. Katleman*, 8 Cal.4th 666, 695 (1994)).

Drawing reasonable inferences in Plaintiff's favor, the facts in the SAC suggest Defendant was responsible for the OSI investigation, that there was malice based on her text messages and pattern of behavior, and there was a lack of probable cause for the complaint. OSI and the Staff Judge Advocate concluded there was no basis for criminal charges, and Plaintiff retired honorably and with full benefits, thus the outcome was not unfavorable to him. As such, malicious prosecution based on the OSI investigation survives the motion to dismiss.

### B. Count III: Tortious Interference with Business Expectancy

In Virginia, tortious interference with contract rights or business expectancy requires four elements "to establish a prima facie case are: '(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.'" *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 318 (Va. 2014) (quoting *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985)). "Additionally, 'when a contract is *terminable at will*, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed *improper* methods.'" *Dunn, McCormack & MacPherson v. Connolly*, 708 S.E.2d 867, 870 (2011) (quoting *Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987) (citation omitted) (emphasis in original)).

Defendant argues that Plaintiff's tortious interference claim must fail because there is no allegation of a specific interference. The SAC alleges that in 2017, Plaintiff shared his general plans of moving to D.C.; this is then paired with the conclusory allegation, Olsewski says, that "his employment likely required his security clearance." Dkt. 29 at 7 (citing SAC ¶ 56). The

generalized knowledge alleged, Ms. Olszewski claims, cannot demonstrate the requisite intentional interference—only speculation. Further, Ms. Olszewski asserts that Plaintiff's timeline of events does not align with any interference with employment at Booz Allen. SMSgt. (Ret.) Cardin joined Booz Allen in December 2018, which means he was both hired and fired months after the April-August 2018 Air Force OSI investigation. Defendant notes that it was the Air Force complaints, not the later Virginia criminal complaints, that led to the NCIC profile and practical suspension of Plaintiff's security clearance. Dkt. 29 at 8 n.2 (citing SAC ¶¶ 37, 56, 79). Ms. Olsewski also notes the absence of any factual support that she ever contacted Booz Allen.

SMSgt. (Ret.) Cardin contests the SAC is adequately specific to state a prima facie claim because Ms. Olsewski expressly stated her threats and intentions to destroy his personal and professional life.[2] The timing of the Booz Allen employment in late 2018 does not defeat Plaintiff's claim, he says, because from November 2017 to the present, Defendant has maintained an unrelenting campaign against him. It was November 2017 that Ms. Olszewski said to SMSgt. (Ret.) Cardin, via text message, that she would seek criminal charges against him, that she would file with the Air Force so that OSI and JAG would know about her claims, and, she finally told Plaintiff, "u can forget unc and Syracuse." SAC ¶ 18. Defendant knew of Plaintiff's plans to retire from the Air Force, move to the D.C. area, and find employment in the defense community, where his security clearance would be an asset. Rather than with Booz Allen specifically, SMSgt. (Ret.) Cardin characterizes the relevant business expectancy as "post-retirement employment in the defense community." Dkt. 34 at 12. Plaintiff also told Defendant

---

[2] Plaintiff revisits an argument from past versions of the complaint in this case – Ms. Olsewski previously made an argument related to privilege protecting defamatory statements as it carries over to tortious interference claims. Defendant does not raise this argument in the pending motion to dismiss and the Court need not discuss it for the purposes of the instant motion.

12

about his plans to pursue an MBA degree, hence her reference to "unc and Syracuse" in November 2017.

Ultimately, Plaintiff's tortious interference claim cannot survive. The first element—the existence of a valid contractual relationship or business expectancy—is not satisfied pursuant to Virginia law regarding Plaintiff's hiring process. "The evidence of an expectancy must establish expectancy by and between two parties at least, based upon something that is a concrete move in that direction," but Plaintiff only alleges an expectancy between himself and general employment in the D.C. area in the defense community. *Moore v. United Int'l Investigative Servs., Inc.*, 209 F. Supp. 2d 611, 619-20 (E.D. Va. 2002). There is no indication that Ms. Olszewski knew of the opportunity with Booz Allen that came to fruition in December 2018, which is a necessary element to "plead a *specific* prospective economic advantage or business expectancy." *Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) (emphasis added) (citing *Masco Contractors Servs. East v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003) ("[T]hese causes of action provide a legal remedy where a particular party's *specific, existing* contract or business expectancy or opportunity has been interfered with in a tortious manner.") (emphasis in original)).

As such, the tortious interference claim must be based on Defendant's conduct once the Booz Allen contract was in place. But the tortious interference claim is further undermined by the timeline of events. SMSgt. (Ret.) Cardin alleges an *unrelenting* campaign against him beginning in November 2017, but he acquired his position with Booz Allen more than a year later in December 2018. In other words, Plaintiff both got the job and lost it during the alleged campaign against him, and the SAC does not allege facts linking Defendant to Booz Allen. The red flag associated with his security clearance due to his NCIC profile, Plaintiff alleges, would

have been present due to the April-August 2018 OSI investigation and, therefore, present when he joined Booz Allen.

Once Plaintiff had the job, Defendant continued filing complaints against him, but no facts suggest an intent to interfere with the Booz Allen job specifically. SMSgt. (Ret.) Cardin alleges an attack on his security clearance, which began before his retirement, and which would have affected his eligibility for future employment in general. At bottom, the SAC fails to allege conduct related to his employment with Booz Allen that materially differs from Defendant's conduct before or since Plaintiff held that position. "Mere knowledge of a possible result of certain actions, without more, cannot constitute an intentional interference," and the SAC only alleges indirect injury without the requisite knowledge and specific intent. *Cominelli v. The Rector and Visitors of the University of Va.*, 589 F. Supp. 2d 706, 716-17 (W.D. Va. 2008); *see also 17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 601 (E.D. Va. 2005) ("[C]ontact by the defendant with the source of the plaintiff's business expectancy, direct or indirect, is a de facto prima facie element of a claim for tortious interference with a business expectancy.").[3]

The allegations related to Plaintiff's MBA likewise cannot support a tortious interference claim. Plaintiff is on track to receive his MBA in December 2020, and it is difficult to characterize his education as a quantifiable contract or identifiable business expectancy. Virginia law requires a breach or termination in the contract or business expectancy, which does not apply to SMSgt. (Ret.) Cardin's forthcoming MBA from Syracuse.

---

[3] In *17th St. Assocs.*, the court also discusses "a fifth, unstated element to the prima facie case," which is a competitive business relationship between the party interfered with and the interferor. *Id.*, 373 F. Supp. 2d at 600. This, too, is absent in the instant case, though the Parties do not argue it.

## IV. CONCLUSION

For these reasons, the motion (Dkt. 28) is hereby **GRANTED IN PART AND DENIED IN PART**. The Motion to Dismiss Count I is denied, and the Motion to Dismiss Count III is granted. Accordingly, Count III is hereby **DISMISSED WITHOUT PREJUDICE**, and may be repled if discovery provides evidence in support related to Plaintiff's employment with Booz Allen Hamilton.

It is **SO ORDERED**.

August 20, 2020  
Alexandria, Virginia

Liam O'Grady  
United States District Judge