# TAB 1

OLSZEWSKI_0000489



**STATE MILITARY DEPARTMENT**
**JOINT FORCE HEADQUARTERS ALABAMA NATIONAL GUARD**
**1730 CONGRESSMAN DICKINSON DRIVE**
**P.O. BOX 3711**
**MONTGOMERY, AL 36109-0711**

NGAL-OPS-DMS                                                                                 2 January 2020

MEMORANDUM FOR COL Johnny R. Bass, Chief of Staff, Alabama National Guard, 1720 congressman W.L. Dickinson Dr., Montgomery, AL 36109-0711

SUBJECT: AR 15-6 Findings and Recommendations concerning the allegations of misconduct by MAJ Leah M. Olszewski

1. Pursuant to the appointment memorandum dated 31 May 2019, I have been appointed as Investigating Officer to conduct an INFORMAL INVESTIGATION pursuant to Army Regulation (AR) 15-6. I have investigated the facts and circumstances surrounding the following allegations: 1) that MAJ Leah M. Olszewski obtained Joint Personnel Adjudication System (JPAS) records concerning an individual to provide documentation to law enforcement for personal reasons through systems not readily available to civilian agencies in violation of JPAS Account Request Procedures, paragraph 4.2, and Privacy Act of 1974 the 20th Special Forces Group; 2) that MAJ Leah M. Olszewski knowingly fraternized with SMSgt(R) Erik Cardin, an enlisted person, in violation of AR 600-20, paragraph 4-14c(2), and Alabama Code of Military Justice Article 92; 3) that MAJ Leah M. Olszewski failed to uphold Army ethic and model core competencies in violation of AR 600-100, paragraph 1-11d; 4) that MAJ Leah M. Olszewski display conduct unbecoming of an officer in violation of Alabama Code of Military Justice Article 133; and that MAJ Leah M. Olszewski failed to maintain good order and discipline within the 20th Special Forces Group (Airborne) in violation of Alabama Code of Military Justice Article 134.

2. Standard of Proof. Pursuant to AR 15-6-3-10b, the findings in this investigation are "supported by a greater weight of evidence than supports a contrary conclusion. The weight of the evidence is not determined by the number of witnesses or volume of exhibits, but by considering all the evidence and evaluating such factors as the witness' demeanor, opportunity for knowledge, information possessed, ability to recall and relate events, and other indications of veracity."

3. The current investigation was completed with my Findings and Recommendations on or about 2 January 2020. Those Findings and Recommendations were based upon my review and analysis of the entirety of the evidence gathered from all witnesses, to include the Respondent's witnesses, and all other documents. The foundation of any investigation is the reliability of the evidence. Reliability is based upon the credibility, or veracity, of the witnesses and supporting documents. In evaluating the credibility of a witness typically certain factors are considered. These factors include the following: 1) did the witness have an opportunity to see or hear the events about which he or she testified; 2) did the witness have the ability to recall those events accurately; 3) is the testimony of the witness consistent or inconsistent with other testimony or evidence in

NGAL-OPS-DMS

SUBJECT: AR 15-6 Findings and Recommendations concerning the allegations of misconduct by MAJ Leah M. Olszewski

the case; 4) did the manner in which the witness present testimony reflect upon his truthfulness; 5) did the witness' background, training, education, or experience affect the believability of that witness' testimony; 6) did the witness have a bias, hostility or some other attitude that affected the truthfulness. *People v. Jackson,* 74 NY2d 787, 790 (1989). In considering the credibility of a witness, a person should also take into account one's own personal experience. The evaluation of a witness' credibility includes observing the witness' demeanor, body language, visual cues, verbal cues, verbal tone, etc.

4. Specific Instructions for the Investigation: The Chief of Staff directed that the following allegations be addressed:

   a.   Did MAJ Leah M. Olszewski obtain Joint Personnel Adjudication System (JPAS) records concerning an individual to provide documentation to law enforcement for personal reasons through systems not readily available to civilian agencies in violation of JPAS Account Request Procedures, paragraph 4.2, and Privacy Act of 1974?

Finding: Unsubstantiated. MAJ Olszewski did obtain an SF86 Authorization from the complainant, but she did not obtain the document through any military system. (Ex. A) However, it should be noted that MAJ Olszewski gained this document without permission of SMSgt (R) Cardin.

   b.   Did MAJ Leah M. Olszewski knowingly fraternize with SMSgt(R) Erik Cardin, an enlisted person, in violation of AR 600-20, paragraph 4-14c(2), and Alabama Code of Military Justice Article 92?

Finding: Substantiated. AR 600-20, paragraph 4-14c(2) prohibits officers and enlisted Soldiers from dating and sharing living accommodation other that those directed by operation requirements. AR 600-20 makes has no exception to allow dating relationships between members of different services. ACMJ Article 92, *Disobeying a lawful order or regulation*, makes it a violation for a person subject to the code to violate a lawful order or regulation, having knowledge of said order or regulation, which it is her duty to obey. MAJ Olszewski admitted throughout this process, to include testimony before Congress, interviews with media outlets and podcast, that she engaged in an intimate dating relationship and shared a home with SMSgt Cardin. (Ex. B-D) This relationship included co-habitation of the parties while both lived they both in California. (Ex. C) During the time of this intimate dating relationship, MAJ Olszewski was a commissioned officer and member of the Alabama Army National Guard. SMSgt Cardin was a non-commissioned officer in the U.S. Air Force. (Ex. B-D) Investigations were conducted by the USAF Office of Special Investigations and USAF Family Advocacy Program that confirmed this inappropriate relationship. (Ex. E-H)

NGAL-OPS-DMS

SUBJECT: AR 15-6 Findings and Recommendations concerning the allegations of misconduct by MAJ Leah M. Olszewski

    c.    Did MAJ Leah M. Olszewski fail to uphold Army ethic and model core competencies in violation of AR 600-100, paragraph 1-11d?

Finding: Substantiated. AR 600-100, paragraph 1-11d states that all Army Leaders *lead others, extend influence beyond the chain of command, lead by example, communicate, create a positive environment, prepares self, develop others, get results, steward the profession, build trust.* MAJ Olszewski's failed to uphold all of these standards. Her conduct in the continued harassment of SMSgt(R) Cardin undermined her authority as an Army Officer. MAJ Olszewski's has displayed an incredible lack of commitment to her duties as an Army Officer. She held critical positions in the 20th SFG(G) and failed to attend mandatory training periods. (Ex: I) MAJ Olszewski transferred to the National Guard November 11, 2013 and appears to have been credited for 2 good years since that time. (Ex: J) MAJ Olszewski gave an unsolicited statement that the reason she wanted to stay in the Guard was to keep and maintain her health insurance benefits. (Ex: I) MAJ Olszewski joined the military May 20, 1997 and has accumulated a total of 5 good years during her entire service career. Her conduct and overall apparent disregard towards the Army and the Alabama Army National Guard fails to uphold the Army ethic and model core competencies under AR 600-100, paragraph 1-11d.

    MAJ Olszewski began a campaign of harassment after the relationship ended with SMSgt(R) Cardin that continues to this day. She has filed warrants and restraining orders in multiple states and with the Air Force Family Advocacy program. (Ex: K & E-H) She testified before Congress and was interviewed for an article that appeared in the Huffington post. Publicly naming him in both cases. Every complaint that has been adjudicated has been found in favor of SMSgt (R) Cardin. The family Advocacy investigation found that she was culpable for emotional abuse and she was placed in the Central Registry Board (Ex: B-H). There is no evidence that SMSgt(R) Cardin initiated any contact or responded inappropriately to MAJ Olszewski after the relationship ended. MAJ Olszewski filed complaints with five separate agencies in four states, to include requesting a protection order from Syracuse University while SMSgt(R) Cardin was a student in their online program. (Ex: L) SMSgt(R) Cardin has lost a lucrative contracting position with Booz Hamilton as a result of the investigations which have all been unfounded. (Ex: M)

    d.    Did MAJ Leah M. Olszewski display conduct unbecoming of an officer in violation of Alabama Code of Military Justice Article 133?

Substantiated. ACMJ Article 133(c) states that behavior, in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the persons standing as an officer. Acts of dishonesty, unfair dealing,

NGAL-OPS-DMS

SUBJECT: AR 15-6 Findings and Recommendations concerning the allegations of misconduct by MAJ Leah M. Olszewski

indecency, indecorum, lawlessness, injustice and cruelty are all acts which indicate that an officer is not possessed of the moral character necessary. The acts described in section (c) support a finding that MAJ Olszewski's has committed acts of dishonesty and indecorum. These acts have seriously compromised her standing as an officer and undermined her authority as a commission officer.

    e. Did MAJ Leah M. Olszewski fail to maintain good order and discipline within the 20th Special Forces Group (Airborne) in violation of Alabama Code of Military Justice Article 134?

Requires further investigation. MAJ Olszewski's time at the 20th Group was characterized as absent by two separate members. (Ex: A & N) During her assignment to 20th Group efforts were initiated to charge MAJ Olszewski with AWOL, but the HHC Commander was instructed by the Group Commander not to follow those procedures. Instead the HHC Commander was instructed to excuse MAJ Olszewski from attending IDT periods. This policy of excusing MAJ Olszewski from attending IDTs continued until a new group commander took command of 20th Group. (Ex: N) MAJ Olszewski was transferred to JFHQ where she has not attended a single IDT. (Ex: J & O) AWOL procedures have been implemented but were suspended when MAJ Olszewski received transfer orders. (Ex: J & P)

5. Recommendation:

6. The point of contact for this memorandum is the undersigned at thomas.r.harrold.mil@mail.mil or at ▬▬▬▬▬.

                              s/ Thomas R Harrold
                              THOMAS R. HARROLD
                              LTC, ALARNG