IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ERIK J. CARDIN, )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>LEAH M. OLSZEWSKI, )<br>)<br>*Defendant.* )<br>)<br>) | Case No. 1:19-cv-01646<br>Hon. Liam O'Grady |

## ORDER

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Dkt. 91) and Motion to Exclude Expert Testimony (Dkt. 94), and on Defendant's Motion for Summary Judgment (Dkt. 100).

For the reasons provided herein, Plaintiff's Motion for Summary Judgment and his Motion to Exclude Expert Testimony are both hereby **DENIED**. Defendant's Motion for Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND AND TIMELINE OF RELEVANT EVENTS

The parties met on an online dating service in July 2016 while living in Florida. Both parties were serving in the military at the time. In August of 2016, Plaintiff was transferred from Florida to California; the two maintained a long-distance romantic relationship until April 2017, when Defendant also moved to California and into Plaintiff's home with him.

The relationship soured quickly after Defendant moved in with Plaintiff, and this strife culminated on October 11, 2017. At this point, after fifteen months of dating and six months of

cohabiting, Plaintiff left the home after a fight which Defendant alleges was physical, including Plaintiff using force beyond what was required to take an item, his laptop computer, out of Defendant's hands. The police were called to the house that night after the fight.

For approximately one month after Plaintiff left the house on October 11, 2017, Defendant sent him text messages and emails, to which Plaintiff did not respond. On November 11, 2017, exactly one month after the fight and Plaintiff's exit from the house, he returned with police officers and at least one of his Air Force colleagues to collect his belongings.

On November 17, 2017, Defendant filed a complaint with the Air Force Family Advocacy Program ("FAP") against Plaintiff. The FAP investigated the allegations and the Central Registry Board ("CRB"),[1] the FAP's administrative arm, found insufficient evidence to support a finding that Plaintiff had abused Defendant.

On April 12, 2018, Defendant filed a complaint against Plaintiff with the Air Force Office of Special Investigations ("OSI"). On August 13, 2018, the OSI formally concluded its investigation and issued a report declining to prosecute Plaintiff for abuse.

Defendant returned to Florida in December 2017. In July 2018, Defendant filed a petition for a protective order against Plaintiff in Santa Rosa County, Florida. The petition was denied in September 2018 based on the Honorable Judge Ross Goodman's finding that there was insufficient evidence to show Defendant faced immediate or future harm from Plaintiff. Dkt. 111-8 at 78–81. Also in September 2018, approximately a week after the Florida petition was denied, Defendant filed a petition for a protective order in California; as the Court understands the facts, these

---

[1] The CRB is defined as "an administrative process that decides whether an allegation of abuse 'meets' or 'does not meet' criteria for entry into the Air Force FAP Central Registry. *Central Registry Board and Clinical Staffing: What Commanders Need to Know*, Air Force, https://www.wpafb.af.mil/Portals/60/documents/fap/publications/Central-Registry-Board-Clinical-Case-Staffing-190307.pdf?ver=2019-03-07-123204-343.

2

proceedings in California are still ongoing.

Plaintiff retired from the Air Force on September 1, 2018. He and Defendant, independently and each apparently unbeknownst to the other, moved to the D.C. area in October 2018. Plaintiff was hired by defense contractor Booz Allen, in part because he maintained a top-secret security clearance from his time in the Air Force.

On May 7, 2019, Defendant filed a criminal complaint against Plaintiff in Alexandria, Virginia, accusing him of stalking her. She claimed she had seen him in a vehicle in the Eisenhower Avenue area as she was leaving a work-related event she had posted about on Facebook. Upon learning that a criminal complaint had been filed against him, Plaintiff turned himself in to the Alexandria police. He denied being in the Eisenhower Avenue area at the time when Defendant claims to have seen him. The charges against him were dismissed *nolle prosequi*. On October 31, 2019, Defendant filed another criminal complaint against Plaintiff, this one in Arlington, Virginia for harassment. That criminal complaint was dismissed *nolle prosequi* as well.

In the intervening time between the filing of the Virginia criminal complaints, Defendant filed a petition for a protective order in Arlington. This petition was denied based on the Honorable Judge Donald M. Haddock, Jr.'s finding that there was insufficient evidence to show Plaintiff had intentionally violated Defendant's California protective order by being in a parking lot near Defendant. Dkt. 111-9 at 88–89.

Plaintiff filed the instant Complaint against Defendant on December 31, 2019, claiming two counts of malicious prosecution and one count of tortious interference with a business expectancy; only the claims of malicious prosecution remain. Defendant filed her Counterclaim against Plaintiff on July 13, 2020 for the tort of domestic violence based on the parties' interactions in California.

## II. LEGAL STANDARD

Summary judgment is an appropriate resolution where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it has the potential to affect the outcome of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute over a material fact is genuine when a reasonable jury could, based on the evidence presented, return a verdict for the nonmoving party. *Id.*

## III. DISCUSSION

### a. Plaintiff's Motion for Summary Judgment

In his Motion, Plaintiff argues that he is entitled to summary judgment on his claim for malicious prosecution based on Defendant's complaint to the Air Force OSI ("Count I"), his claim for malicious prosecution based on Defendant's criminal complaints in Virginia ("Count II"), and Defendant's Counterclaim for the tort of domestic violence under California law.

#### i. *Count I*

Count I of Plaintiff's Amended Complaint concerns Defendant's complaints against Plaintiff to the Air Force OSI. This Court has determined in a prior order that Count I is governed by California law. Dkt. 36 at 7–9.

In order to succeed on a claim for malicious prosecution in California, a plaintiff must show (1) the institution of an action (2) without probable cause and (3) with malice, that (4) terminated in a manner favorable to the defendant, (5) resulting in injury in the form of attorney's fees incurred in the defense, mental distress, and/or injury to reputation or social standing. *Harbor Ins. Co. v. Cent. Nat'l Ins. Co.*, 165 Cal. App. 3d 1029, 1036, 211 Cal. Rptr. 902 (Ct. App. 1985).

Plaintiff's claim for malicious prosecution based on the OSI investigation must fail,

because he was never prosecuted in connection with that investigation. *See* Plaintiff's Memo in Support of Motion for Summary Judgment, Dkt. 92 at 39 ("No military prosecution of Erik Cardin followed the Office of Special Investigations' comprehensive investigation in response to Ms. Olszewski's April 2018 Complaint."). An investigation alone, which does not lead to proceedings before a court or administrative board with the power to take action adverse to the plaintiff's legally protected interests, is not sufficient to carry a claim for malicious prosecution under California law. *Imig v. Ferrar*, 70 Cal. App. 3d 48, 58, 138 Cal. Rptr. 540 (Ct. App. 1977).

Plaintiff was never brought before a court or an administrative board that had the power to take action adverse to his legally protected interests. An investigation was opened and was later closed. Plaintiff was never arrested, was never charged with a crime, and never faced trial.

For this reason, Plaintiff has failed to establish the first element of malicious prosecution under California law and is not entitled to summary judgment on Count I.

### ii. Count II

Count II of Plaintiff's Amended Complaint concerns Defendant's criminal complaints against plaintiff in Alexandria and Arlington, Virginia. This malicious prosecution claim is governed by Virginia law. To show malicious prosecution under Virginia law, a plaintiff must show that the prosecution in question (1) was malicious; (2) was instituted by, or with the cooperation of, the defendant; (3) lacked probable cause; and (4) was terminated in a manner not unfavorable to the plaintiff. *Bennett v. R & L Carriers Shared Servs.*, LLC, 744 F. Supp. 2d 494, 510 (E.D. Va. 2010), aff'd, 492 F. App'x 315 (4th Cir. 2012).

The second and fourth elements of this test are not in dispute. The criminal actions were instituted based on Defendant's claims, and both were dismissed *nolle prosequi* by the prosecution. A *nolle prosequi* dismissal constitutes a termination in a manner favorable to Plaintiff. *Bennett*,

744 F. Supp. 2d at 525.

However, Plaintiff has failed to establish irrefutable evidence of malice. Malice is defined as the "doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Davis v. Commonwealth*, 65 Va. App. 485, 502, 778 S.E.2d 557 (2015). It may be shown by the person's words, or inferred from their acts. *Id.* Legal malice can also be inferred from a lack of probable cause. *Giant of Va., Inc. v. Pigg*, 207 Va. 679, 685, 152 S.E.2d 271 (1967). Plaintiff argues that Defendant's malice can be inferred through her text messages and emails to him, which said things like "youll end up with a misdemeanor," "im going to file with the air force. So osi and jag will know," "this is what u asked for." Dkt. 92 at 8. These messages show that Defendant intended to take legal action against Plaintiff, and the type of legal action she threatens would be consistent with the behavior of which she accuses him. They fall short of showing malice as a matter of law; the doing of a wrongful act out of ill will. As such, the question of malice remains one for the jury. *Pigg*, 207 Va. at 685.

Plaintiff has also failed to establish lack of probable cause as a matter of law. Probable cause is defined in Virginia as "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected. *Id.* at 684. This is an issue for the jury in cases where the evidence conflicts or is unclear. *Id.*

Plaintiff relies heavily on his prior legal encounters with Defendant to suggest that she could not reasonably expect success in her criminal complaints. Dkt. 92 at 36–38. The Court does not find this argument convincing. The he-said, she-said nature of the facts in this case prevent the Court from making a determination about what Defendant knew to be true or untrue when she filed the criminal complaints. The issue of probable cause must be left to the jury.

6

These genuine issues of material fact concerning malice and probable cause preclude summary judgment on Count II.

### iii. *Defendant's Counterclaim*

Plaintiff argues that he is entitled to summary judgment on Defendant's Counterclaim because the Counterclaim is barred by the statute of limitations and collateral estoppel, and because it does not satisfy the elements of California's tort of domestic violence. The Court finds that he is incorrect in each of these three arguments.

Plaintiff argues that Defendant's Counterclaim is barred by Virginia's two-year statute of limitations for personal injury claims. Dkt. 92 at 28. The Court addressed this issue in December 2020 in its order denying Plaintiff's Motion for Judgment as a Matter of Law. Dkt. 55. In that order, the Court stated that California's three-year statute of limitations was substantive law, and so applied to the acts of physical violence of which Plaintiff is accused. *Id.* at 4–5. The Court also held that a two-year statute of limitations applied to any acts of intentional infliction of emotional distress of which Plaintiff is accused. *Id.* at 5.

Plaintiff points out that contradicting and altering a prior ruling is permitted. *Schwartz v. Chan*, 142 F.Supp.2d 325, 329 (E.D.N.Y. 2001). However, the Court believes it made the correct decision in its prior order and declines to alter that decision now.

The doctrine of collateral estoppel exists to prevent parties from relitigating claims or issues that have already been settled by the courts. An issue or fact is barred by collateral estoppel where (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair

opportunity to litigate the issue or fact in the prior proceeding. *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).

Plaintiff first identifies the Air Force FAP and OSI investigations as precluding the Counterclaim. Neither of these events satisfy the elements of collateral estoppel: neither the FAP nor the OSI litigated the facts or issues at hand, neither resulted in a legally final judgment, and neither gave Defendant a full and fair opportunity to litigate the facts or issues. These were investigations only, and do not have the legally binding effect of a judicial determination.

Plaintiff next argues that the protective order proceedings in Florida preclude the instant litigation. That proceeding, however, does not satisfy the requirement that the issues be identical in the present and past litigations, nor does it satisfy the requirement of an actual resolution to the issue. The Florida action did not result in a judicial determination that Plaintiff was innocent of domestic abuse, only that Defendant had not satisfied her burden of proof that she was entitled to a protective order. Dkt. 111-8. The Court based this determination largely on the fact that Defendant had no reasonable fear of abuse from Plaintiff, who was living across the country at the time. *Id.*

The Alexandria petition for a protective order similarly does not preclude the matter before us. The central issue in that proceeding was whether Plaintiff's alleged presence in the Eisenhower Avenue area near Defendant constituted a violation of Defendant's California protective order. Dkt. 111-9 at 88–90. This is a very narrow issue, and unrelated to the issues at play in Defendant's Counterclaim for domestic violence in California.

Finally, Plaintiff argues that Defendant's Counterclaim cannot satisfy the elements of the tort of domestic violence under California law. The relevant law states that a person who "commits an act of domestic violence upon another" may be held civilly liable for damages. Cal. Civ. Code

8

§ 1708.6(b). Subdivision (a) reads:

> A person is liable for the tort of domestic violence if the plaintiff proves both of the following elements:
>
>> (1) The infliction of injury upon the plaintiff resulting from abuse, as defined in subdivision (a) of Section 13700 of the Penal Code.
>>
>> (2) The abuse was committed by the defendant, a person having a relationship with the plaintiff as defined in subdivision (b) of Section 13700 of the Penal Code.

Subdivision (b) of the California Penal Code § 13700 includes cohabitants. Therefore, the only definition at issue here is that of the word "injury" in subdivision (a) of § 1708.6.

Defendant's claims satisfy this definition of abuse; she alleges that Plaintiff intentionally caused her bodily injury, including kicking her in the stomach and causing her to miscarry. The dispute is whether these claims are true, and that is the very definition of a genuine issue of material fact. Summary judgment is therefore inappropriate; this matter should be decided by a jury.

### b. Defendant's Motion for Summary Judgment

Defendant also requests summary judgment on Counts I and II of Plaintiff's Amended Complaint. As stated above, Count I of Plaintiff's Amended Complaint concerns Defendant's complaints against Plaintiff to the Air Force OSI, and Count II concerns Defendant's criminal complaints against plaintiff in Alexandria and Arlington.

As explained in Section III(a)(i) of this Order, in order to succeed on Count I Plaintiff must show (1) the institution of an action (2) without probable cause and (3) with malice, that (4) terminated in a manner favorable to the defendant, (5) resulting in injury in the form of attorney's fees incurred in the defense, mental distress, and/or injury to reputation or social standing. *Harbor Ins. Co.*, 165 Cal. App. 3d at 1036. Plaintiff cannot show that any action was instituted against him in relation to Defendant's complaint to the OSI. He cannot claim malicious prosecution where he was not prosecuted. Summary judgment in Defendant's favor is therefore appropriate on Count

9

I.

In order to succeed on Count II, Plaintiff must show that the prosecution in question (1) was malicious; (2) was instituted by, or with the cooperation of, the defendant; (3) lacked probable cause; and (4) was terminated in a manner not unfavorable to the plaintiff. *Bennett*, 744 F. Supp. 2d at 510. The second and fourth elements are not in dispute, and so we only consider the issues of malice and probable cause as we did above.

A showing of probable cause is an absolute bar against a malicious prosecution claim. *Ekizian v. Microstrategy, Inc.*, 71 Va. Cir. 425, 1 (2005). The Supreme Court of Virginia explained in *Ekizian* that malicious prosecution claims are disfavored in Virginia, because they tend to discourage individuals from bringing criminal actions. *Id.* at 3.

As discussed above in Section III(a)(ii) of this order, the facts of this case are simply too amorphous at this stage to determine with any certainty what Defendant knew to be true or untrue when she filed the criminal complaints. What Defendant knew to be true or untrue is the central issue of fact when determining the elements of malice and probable cause. If Defendant did indeed see him near her when she claims to have seen him, then she would have probable cause to believe he was in her vicinity in violation of her California protective order; if she did not see him that day, and knew that she had not seen him, then she would lack probable cause to file her criminal complaint. This example shows just one of the remaining genuine issues of material fact that must be determined by a jury before Count II can be resolved. Summary judgment is therefore inappropriate on Count II.

**c. Plaintiff's Motion to Exclude Testimony**

Plaintiff moves to exclude the expert testimony of Dr. James W. Hopper. Dr. Hopper is a clinical psychologist who teaches a course on trauma and its effects on neurobiology at Harvard

Medical School. He has submitted a report discussing the effect of stressful and traumatic experiences on memory and the prevalence of extreme self-protective behaviors in trauma survivors. *Id.* at 6.

The Supreme Court has held that trial courts are responsible for ensuring that an expert's testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Dr. Hopper's testimony satisfies both requirements. It is reliable as the opinion of an expert in the field of neurological responses to trauma, and it may be relevant to two essential facts of Plaintiff's malicious prosecution claim: whether Defendant was acting maliciously and without probable cause, or was simply reacting to trauma. The Court will limit the breadth of Dr. Hopper's testimony depending on the facts adduced at trial.

Dr. Hopper's report satisfies Federal Rule of Evidence 702: (a) his specialized knowledge will help the jury determine a fact in issue; (b) his testimony is based on sufficient facts and data; (c) his testimony is the product of reliable principles and methods; and (d) he has reliably applied those principles and methods. The report does not delve into the facts of this case or apply analysis to those facts, but the 2000 Amendment Committee Notes of Rule 702 make clear that an expert witness may be brought to help the factfinder understand general principles and is not required to apply those principles to the facts of the case.

Defendant will be permitted to adduce Dr. Hopper's testimony at trial. Plaintiff will likewise be permitted to challenge that testimony through cross-examination in due course.

## IV. CONCLUSION

Plaintiff's Motion for Summary Judgment is hereby **DENIED** in full. His Motion to Exclude Expert Testimony is also hereby **DENIED.**

Defendant's Motion for Summary Judgment is hereby **GRANTED** as to Count I of Plaintiff's Amended Complaint, and Defendant is accordingly awarded summary judgment on that matter. The remainder of Plaintiff's Summary Judgment Motion is hereby **DENIED**.

It is **SO ORDERED**.

May 28, 2021
Alexandria, Virginia

Liam O'Grady
United States District Judge