**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ERIK J. CARDIN,            ) | |
|                      ) | |
|            *Plaintiff,*     ) | |
| v.                     ) | Case No. 1:19-cv-01646 |
|                      ) | Hon. Liam O'Grady |
| LEAH M. OLSZEWSKI,       ) | |
|                      ) | |
|            *Defendant.*    ) | |

## ORDER

This matter came before the Court on Plaintiff Erik Cardin's "motion for the Court to consider California statutory authority on [his] motion to exclude secret audio recordings made in California." *See* Dkt. 180.

Mr. Cardin challenged the admissibility of several audio recordings made by Defendant Leah Olszewski during arguments between the Parties in their California residence during 2017. He contended that Ms. Olszewski made these recordings surreptitiously, capturing Mr. Cardin's confidential communications without his knowledge or consent. *See id.* at 1–2. As such, he urged the Court to preclude Ms. Olszewski's recordings from evidence pursuant to Cal. Penal Code § 632, which contains a civil exclusionary rule for recordings made "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, [where] the communication is carried on among the parties in the presence of one another . . . ." *Id.* § 632(a).

Section 632(c) of the California Penal Code defines a "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made

. . . in any . . . circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." *Id.* § 632(d). According to Plaintiff:

> The secretly recorded pitched arguments plainly involved *only* [Plaintiff] and [Defendant], and the arguing [captured in the recordings] was in their shared private residence in Vacaville, CA. No third-parties were present — these were confidential communications. [Defendant] seemingly provoked [Plaintiff] and then secretly recorded the arguments using her smartphone. Quite obviously, [Plaintiff] never consented to the recordings.

Dkt. 180, at 1; *see also id.* at 2 (citing *Weiner v. ARS Nat. Servs., Inc.*, 887 F. Supp. 2d 1029 (S.D. Cal. 2012)) ("Three elements that a party must prove to establish violation of California's Invasion of Privacy Act are (1) an electronic recording of, or eavesdropping on; (2) a confidential communication; and (3) all parties did not consent.").

Ms. Olszewski took issue with Mr. Cardin's position, contending that her recordings were admissible under two statutory safe harbors for Section 632. Specifically, she urged that under Section 633.5, the recording was lawfully made because it was "made for the purpose of obtaining evidence reasonably believed to relate [to] the commission of any felony involving violence against the person, including domestic violence." Dkt. 193, at 2 (citing Cal. Penal Code § 633.5). Moreover, she argued that, under Section 633.6, "[w]here a victim of domestic violence who is seeking a domestic violence restraining order from a court and who reasonably believes that a confidential communication made to him or her by the perpetrator may contain evidence germane to that restraining order," a one-party recording may be admitted without running afoul of Section 632. *See id.* (citing Cal. Penal Code § 633.6). According to her interpretation of these provisions, her recordings would be admissible if they are relevant.

Ms. Olszewski would be correct, but for the unfortunate timing of the California Legislature's enactment of the operative statutory safe harbors on which she relies. When Defendant recorded Plaintiff in 2017, Section 633.5 did not shield her from liability; she was

committing a crime.[1]  The legislative history accompanying the 2018 statutory amendments to Sections 633.5 and 633.6 makes this clear.[2]  With respect to Section 633.5, the Bill Analysis of A.B. 413 on the Senate Floor reveals significant consternation within the legislative body over Section 633's failure to immunize one-party recordings of would-be perpetrators of domestic abuse from criminal and civil liability:

> California is one of only 11 states that does not allow a domestic violence survivor to use recorded evidence of her abuse in a courtroom unless the abuser gives consent to being recorded . . . .  If a survivor tries to admit these recordings into evidence the survivor can be sued in civil court by the abusive party and charged criminally by the state . . . .  Survivors of domestic violence who are brave enough to face their abusers in court are in danger of not receiving the help they need from our court system.  Domestic violence abuse is defined in California law as physical, emotional, or psychological abuse . . . .  California law does allow a survivor to introduce recordings of domestic violence abuse that amount to a violent felony; however, most domestic violence crimes, such as battery and assault, are only charged as misdemeanors (Penal Code §§ 630–638).  Therefore, the argument in court becomes a "he-said, she-said," leaving out recordings that are the most reliable types of evidence. . . .  This bill would allow individuals that are a party to a confidential communication to record evidence of domestic violence abuse and allow the survivor of that domestic violence to submit those recordings as evidence in a court proceeding— without fear of being sued by the abusive party for invasion of privacy. This would allow a judge to use her discretion to determine the relevance and admissibility of the recording.

California Bill Analysis, A.B. 413 (July 11, 2017); *see also* California Committee Report, 2017

---

[1] *Compare* Cal. Penal Code § 633.5 (2021) ("[Section 632 does] not prohibit one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion, kidnapping, bribery, any felony involving violence against the person, including, but not limited to . . . *domestic violence as defined in Section 13700*. [Section 632 does] not render any evidence *so obtained inadmissible in a prosecution* . . . .") (emphasis added), *with* Cal. Penal Code § 633.5 (2017) ("Nothing in Section [632] prohibits one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion, kidnapping, bribery, any *felony involving violence against the person* . . . .  Section [632 does] not render any evidence so obtained inadmissible in a prosecution . . . .") (emphasis added).

[2] California courts afford significant interpretative deference to legislative history. *See, e.g., In re Trever P.*, 14 Cal. App. 5th 486, 496 (Ct. App. 2017) ("Our ultimate task in interpreting statutes is to ascertain and effectuate legislative intent. . . . [I]f the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. . . . In the end, we must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.") (cleaned up); *see also Pugliese v. Superior Ct.*, 146 Cal. App. 4th 1444, 1454 (Ct. App. 2007) ("The legislative history of Civil Code section 1708.6 supports our conclusion that the Legislature intended the tort of domestic violence to be considered a continuing wrong.").

Assembly Bill No. 413 (Third Reading) (July 13, 2017) ("This bill . . . allows a party to a confidential communication to record the communication for the purpose of obtaining evidence reasonably believed to relate to the commission of domestic violence by another party to the communication. The recordings would be admissible in court.").

A.B. 413 sensibly amended Section 633.5 to institute new protections allowing a would-be victim of domestic violence to record their potential abuser. But that amendment did not come in time for Ms. Olszewski. The changes to Section 633.5 went into effect on January 1, 2018, months after she recorded her terrifying encounter with Mr. Cardin. Because Ms. Olszewski's recordings were not lawfully made, they are not admissible. *See People v. Parra*, 165 Cal. App. 3d 874, 880–81 (Ct. App. 1985) ("[W]e commence with the general proposition that unless unlawfully obtained, all relevant evidence is admissible . . . .").

The Court finds no merit to Ms. Olszewski's argument that Mr. Cardin lacked an objectively reasonable expectation that he was not being recorded given the "abusive substance of the communication." *See* Dkt. 193, at 2 n.1 (citing *Flanagan v. Flanagan*, 41 P.3d 575, 580 (Cal. 2002)). This argument would create an exception that swallows the rule, calling into question why the California Legislature bothered to amend Section 633.5 in the first place. *See supra.* Also unavailing is Ms. Olszewski's argument, raised for the first time in open Court moments before jury selection, that the 2017 version of Section 633.5 should allow for the introduction of the tapes because Ms. Olszewski made the recording with the purpose of obtaining evidence reasonably believed to relate to a battery. *See* Dkt. 199. Even if this were true, the legislative history of A.B. 413 makes clear that the California Legislature altered Section 633.5 *because* "most domestic violence crimes, such as battery and assault, are only charged as misdemeanors." California Bill Analysis, A.B. 413 (July 11, 2017). Finally, the Court will not admit the audio recordings in

4

response to Ms. Olszewski's argument that "based on the parties' testimony in prior proceedings, a factual dispute exists over whether Mr. Cardin knew or suspected the conversations were being recorded." Dkt. 193, at 2, n.1. This factual dispute was not clarified in sufficient detail in Ms. Olszewki's written opposition to Mr. Cardin's motion *in limine*. *See* Dkt. 193, at 2, n.1 ("Moreover, based on the parties' testimony in prior proceedings, a factual dispute exists over whether Mr. Cardin knew or suspected the conversations were being recorded."). Setting aside the resulting prejudice flowing from this veiled contention, the Court has carefully reviewed Ms. Olszewski's testimony in the Florida protective order proceedings. To that end, circumstantial evidence, common sense, and reason dictate that Mr. Cardin did not know he was being recorded when he made his vitriolic remarks to Ms. Olszewski.[3] The Court makes this determination by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); Fed. R. Evid. 401(a).

Ms. Olszewski's argument based on Cal. Penal Code § 633.6 fails for the same reason. The current version of Section 633.6 authorizes the surreptitious recording of another individual by a Party "who is seeking a domestic violence restraining order from a court and who reasonably believes that a confidential communication made to him or her by the perpetrator may contain evidence germane to that restraining order." Dkt. 193, at 2 (citing Cal. Penal Code § 633.6). However, the version of Section 633.6 in effect in 2017 when the recordings were made was far more circumscribed in its protections. *See* Cal. Penal Code § 633.6(a) (2017) ("Notwithstanding the provisions of this chapter, and in accordance with federal law, *upon the request of a victim of*

---

[3] Though Ms. Olszewski attests that Mr. Cardin "was aware" that he was being recording during unspecified arguments between the Parties, she also concedes that he told her, "I won't talk to you anymore, if you have your phone on you." *See* Def's Trial Ex. 43, at 51. That Mr. Cardin "knew [Ms. Olszewski's] phone was right there" during certain conversations is not enough to demonstrate by a preponderance of the evidence that he had no reasonable expectation that he was not being recorded during the captured encounters. *Id.*

*domestic violence who is seeking a domestic violence restraining order, a judge issuing the order may include a provision in the order that permits the victim to record any prohibited communication made to him or her by the perpetrator*.") (emphasis added). This version would have authorized Ms. Olszewski to obtain *ex ante* permission from a judge to record Mr. Cardin, but not to record first and move to admit the recorded statements later. *See* California Committee Report, 2017 Assembly Bill No. 413 (Third Reading) (July 13, 2017) ("A.B. 413 is intended to close a loophole in current two-party consent exceptions. Courts can allow a two-party consent exception for recordings of domestic violence abuse as evidence of a [Domestic Violence Restraining Order] violation. However, domestic violence survivors are not allowed to use the recording of domestic violence as evidence to obtain *the initial restraining order*. A.B. 413 closes that loophole by allowing all recordings of domestic violence abuse to be offered as evidence, not just those in violation of an existing restraining order.") (emphasis added). Ms. Olszewski did not comply with the version of Section 633.6 in effect in 2017, so her recording was unlawful.

Mr. Cardin's statements were deeply contemptible. Still, the Court cannot forge exceptions to Section 632 out of whole cloth on public policy grounds, in direct contravention of the plain text and legislative history of Sections 633.5 and 633.6. For these reasons, and the reasons stated from the bench, Mr. Cardin's motion (Dkt. 180) is **GRANTED**. The Court notes that Ms. Olszewski is not deprived of the value of the recordings. She may use the recordings to impeach Mr. Cardin when appropriate and may also testify directly about Mr. Cardin's statements pursuant to Fed. R. Evid. 801(d)(2), using the transcripts of the recordings to refresh her recollection.

It is **SO ORDERED.**

July 14, 2021
Alexandria, Virginia

Liam O'Grady
United States District Judge