IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

- Alexandria Division -

| | |
|---|---|
| **ERIK J. CARDIN** ) | |
| ) | |
| versus ) | Case No.:  1:19-cv-1646 LO/JFA |
| ) | |
| **LEAH M. OLSZEWSKI** ) | |
| ) | |

# PLAINTIFF ERIK J. CARDIN MOTION FOR
# A PERMANENT INJUNCTION

In his Second Amended Complaint, Plaintiff Erik J. Cardin identified his REQUESTED RELIEF.  In ¶ C of "Request Relief," the Relief sought included the following:

Plaintiff Erik J. Cardin requests the Court to issue an injunction barring Ms. Olszewski from making further claims against him based on the allegations described in this Second Amended Complaint.

As confirmed in the trial testimony, the case was brought in part to bring to an end Defendant Olszewski's relentless torment of SMSgt. (R) Cardin.  The trial evidence confirmed her 15 Complaints/Actions against Erik Cardin since late-2017 – she has prevailed on none.  The Jury Verdict was for Plaintiff Cardin on his Alexandria and Arlington claims for Malicious Prosecution.  See FIGURE 1 below.  The Verdict Form shows clearly that the Jury found "Legal Malice" on both Malicious Prosecution claims, and then separately found "Actual Malice." FIGURE 2 below.

A permanent injunction barring Ms. Olszewski from making "further claims against [Erik Cardin] based on the allegations described in this Second Amended Complaint" is amply supported by the record.

1

1. **The Jury's Verdict and the Trial Evidence**

The Jury returned its Verdict on Friday, July 16, 2021. FIGURES 1 and 2 show the Verdict.

**Figure 1**
**Jury's Verdict on Plaintiff Cardin's Malicious Prosecution Claims**



**Figure 2**
**Jury's Verdict Finding Actual Malice**

The Trial Evidence presented the litany of Complaints and actions by Leah Olszewski after Erik Cardin left the Relationship on October 11, 2017 and moved out of their shared home on November 11, 2017. FIGURE 3 below shows the 15 Complaints/Actions.

*April 12, 2018 Criminal Complaint to the OSI*.  On April 12, 2018, Leah Olszewski filed her Criminal Complaint with the Air Force Office of Special Investigations (OSI) claiming that Erik Cardin physically assaulted her, and that she was then pregnant and miscarried. She alleged "killing an unborn child," a felony under the UCMJ. The 2018 OSI Report of Investigation disassembles her claims. The detailed Report of Investigation includes among the OSI findings:

- 2-3. On 13 Apr 18, SA TINNELL reviewed VICTIM's written statement dated 3 Jan 17 [sic] (Exhibit 1), provided to 60th Security Forces Squadrons (SFS), Security Forces Office of Investigations (SFOI), TAFB, CA … ***VICTIM reported SUBJECT never hit her nor did he ever force her to do anything against her will.***

- 2-8. VICTIM INTERVIEW**:** On 23 Apr 18, SA JESSICA MATYI and SA NATHANIEL COOPER, AFOSI Det 121, Hurlburt Field (HFLD), FL, interviewed VICTIM at 223 Cody Avenue, HFLD, FL

  ***VICTIM never sought medical care*** or looked for any bruising or other injuries following these incidents

- 2-23. On 10 May 18, SA TINNELL reviewed of VICTIM's text messages provided to SFS (Exhibit 10). The review disclosed the following information: ***VICTIM never informed anyone about a miscarriage***.

It was no surprise that the military prosecutor declined to prosecute Erik Cardin on any charges.

Leah Olszewski's OSI Criminal Complaint came after an Air Force investigation conducted at Travis AFB led to hearings with findings that the evidence did not support Ms. Olszewski's claims that Mr. Cardin physically and/or emotionally abused her.  In fact, the 60th Air Mobility Wing Central Registry Board not only determined that there was insufficient evidence against SMSgt. Cardin, but also that *Ms. Olszewski was the emotional abuser!*

3

*Protective Order Petitions.* Moving beyond her many complaints to the United States Air Force, as shown in FIGURE 2, Leah Olszewski has filed and pursued Petitions for Protective Orders in three states. The order she relies on is a temporary California Protective Order on an *ex parte* filing on September 20, 2018. California typically requires that *ex parte* orders be tested within a few weeks of filing. It has now been 2½ years.

First, Ms. Olszewski filed in Florida. In the September 2018 trial on Ms. Olszewski's *ex parte* Florida Petition for a Protective Order, the Santa Rosa County Circuit heard testimony and received exhibits. At the end of the trial, her Petition was denied by written Order. In response to the judge's questioning, Ms. Olszewski conceded that she sought no medical care and she has no medical records that support her claims of physical assault, pregnancy and miscarriage.

**FIGURE 3**
**Leah Olszewski' Fifteen Complaints/Actions against Erik Cardin**

**Vacaville, CA Police and District Attorney**
- Report – Oct. 11, 2017 (No Arrest/No Prosecution)
- Rev. Report – Nov. 17, 2017 (No Arrest/No Prosecution)

**United States Air Force – Complaints/Actions**
- Family Advocacy Program Complaint -- Nov. 17, 2017
- Central Registry Bd. Hearing #1 -- Dec. 19, 2017
- Central Registry Bd. Hearing #2 – Jan. 25, 2018
- Air Force Security Forces Complaint – Feb. 2, 2018
- Congressman Garamendi – Mar. 26, 2018
- Sec. of USAF/Insp Gen. – Mar. 27, 2018
- Off. of Spec. Investigations – Apr. 12, 2018 (see below)

***Ex Parte* Protective Orders**
- Santa Rosa County, FL – filed July 20, 2018
  Trial -- Sept. 12, 2018 (Petition Denied)
- Solano County, California – filed Sept. 20, 2018
  Trial continued four times (pending trial)
- Alexandria, Virginia – filed May 7, 2019
  Trial – July 10, 2019 (Petition Denied)
  Appeal withdrawn – Nov. 1, 2019
  (GDC Judgment affirmed)

**Criminal Complaints**
- US Air Force Office of Special Investigations
  Staff Judge Advocate – No Prosecution
- Alexandria, VA – filed May 7, 2019
  *Nolle Prosequi* – June 11, 2019
- Arlington, VA – filed Oct. 31, 2019
  *Nolle Prosequi* – May 19, 2020

**Syracuse University**
- Title IX Complaint – June 2019

4

Second, just *eight days after* the Florida Court's denial of her Petition, Ms. Olszewski filed for another *ex parte* Protective Order against Erik Cardin, this time in California. The California DV-100 Request, now continued four times, made no mention of the negative Florida outcome.

Lastly, defendant Olszewski filed for an *ex parte* Protective Order in Virginia in May 2019. After a July 2019 trial in the Alexandria courts, Judge Donald M. Haddock, Jr. denied her Petition. Ms. Olszewski appealed; yet on November 1, 2019, the morning of the appeal trial in the Alexandria Circuit Court, she sent her counsel to withdraw her appeal.

***May 7, 2019 and October 31, 2019 Criminal Complaints.*** On May 7, 2019, Ms. Olszewski filed her Alexandria Criminal Complaint against Erik Cardin pursuant to Va. Code § 18.2-60.3 for criminal stalking. Her Complaint ended when the Commonwealth's Attorney moved for a *Nolle Prosequi* dismissal on June 11, 2019. The Court granted the Motion and dismissed.

When asked in her April 8th, 2021 Deposition about what Mr. Cardin said to the Army and National Guard, she answered, "I have no idea." This information void, however, did not deter her making another criminal claim against Erik Cardin based on that conversation. At 8:15 p.m. on October 31, 2019 – the night before her scheduled trial on her appeal of the denial of her Alexandria Protective Order – Leah Olszewski filed her Criminal Complaint against Erik Cardin in Arlington County for violation of a protective order cited Va. Code § 16.1-253.1 as the legal basis. The Arlington County Commonwealth's Attorney moved for a *Nolle Prosequi* dismissal on May 19, 2020. The Court granted the Motion, thus ending Leah Olszewski's second criminal case in Virginia.

*Other Complaints.* The Jury was permitted to consider Ms. Olszewski's entire course of conduct towards Mr. Cardin when deciding the question of malicious prosecution. This conduct encompasses non-legal complaints, including her communications with Syracuse and UNC, as well as Booz-Allen Hamilton. Ms. Olszewski testified under oath in the Alexandria trial that she had not communicated with Booz Allen, although she later admitted in her Deposition to talking with them.

**2. Showing for a Permanent Injunction.**

A Federal Court has authority to issue injunctive relief under FRCP Rule 65(d). Its authority over this matter has since been confirmed. *Winter v. Natural Resources Defense Council, Inc.*, 557 U.S. 7, 129 S. Ct. 365 (2008); *Real Truth about Obama, Inc. v. FEC, et al.*, 575 F.3d 342 (4th Cir. 2009)). *Winter* created a new standard for granting injunctive relief, under which a movant must show that he will likely suffer irreparable harm, he is likely to succeed/ has already succeeded on the merits, the balance of equities tips in his favor, and an injunction would be the public interest.

Recently, this Court, in *RXD Media, LLC v. IP Application Dev.,* No. 1:18-CV-486, 2019 WL 2569543, at *1 (E.D. Va. June 21, 2019) (O'Grady, J.), recited the requirements for a permanent injunction:

> A party seeking an injunction must demonstrate "(1) it has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) the balance of the hardships favors the party seeking the injunction; and (4) the public interest would not be disserved by the injunction." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011).

*See also, Hair Club for Men, LLC v. Ehson*, No. 1:16-CV-236, 2016 WL 6780310, at *2 (E.D. Va. Nov. 14, 2016);

Plaintiff Erik Cardin plainly satisfies these requirements, as argued below.

6

*Irreparable Harm*.  Leah Olszewski's relentless pursuit of Erik Cardin was described in detail in trial. Plaintiff Cardin testified about the injuries he endured from Ms. Olszewski's non-stop actions, including the harm to his reputation and "good-will," his two arrests, the deprivation of his right to liberty,[1] the loss of his security clearance, and his denial from UNC/ his firing from Booz Allen as a result of Ms. Olszewski's communications with them. This Court has held that the alleged irreparable harm must be actual and immediate, not speculative or remote in time. *See FBR Capital Markets & Co. v. Short,* 2009 U.S. Dist. LEXIS 94558 (E.D. Va. Oct. 9, 2009) (J. O'Grady). The harm that Erik Cardin faces is certainly actual and immediate. Looking at Ms. Olszewski's pattern of action, whenever she has failed to achieve the result she wanted, she has promptly brought another charge or suit against Mr. Cardin. This is often within several months, but sometimes has been within mere days (FIGURE 3 above).

Already, Ms. Olszewski is not backing down from her California Protective Order even though her California attorney withdrew shortly before trial in this Court. Erik Cardin is preparing yet again go to trial, represented by an attorney, in order to clear his name. As the Jury verdicts were being read in trial, Ms. Olszewski ran from the courtroom, crying and saying how no one believes her. She has made it clear to everyone that she will not stop pursuing further action against Mr. Cardin.

---

[1] In general, malicious prosecution does not constitute a deprivation of liberty without due process of law. *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981). However, an exception exits where malicious prosecution is conducted with the intent to distort or corrupt the process of the law. *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc). By acting with *actual malice* in making both of her Virginia claims against Mr. Cardin, Leah Olszewski abused the law to get Erik Cardin arrested.

***Remedies at Law Inadequate***.  Erik Cardin pursued his legal claims for Malicious Prosecution. Mr. Cardin's personal resources were limited to begin with, and are now more than depleted. If Ms. Olszewski continues, then Mr. Cardin likely does not have the resources to continue to defend himself against her and the advocacy groups that have covered her legal fees to this point. The monetary damages which Mr. Cardin was awarded by the Jury *do not* prevent her future harassment. Without an injunction, Plaintiff Cardin would very likely suffer continued torment and be forced to "bring successive suits for monetary damages." *Id.* (quoting *Teaching Co. P'ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 587 (E.D. Va. 2000)). Erik Cardin succeeded in Trial, yet the threat of further injury to Mr. Cardin by Ms. Olszewski is still very much present. Injunctive relief is the sole adequate way to remedy this harm. *See Roland Mach. Col. V. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir. 1984).

***Balance of Hardships***.  The balance of hardships weighs in a plaintiff's favor when there is "no legal right [for the Defendant] to continue their current course of conduct." See *Portfolio Recovery Assocs., Inc. v. Portfolio Recovery Grp., LLC*, 2013 WL 5723869, at *10 (E.D. Va. Oct. 18, 2013); *Hammerhead Entm't*, 2011 WL 2938488, at *9 (same).

Ms. Olszewski's reasonable pursuit of Erik Cardin ended long ago. After hearing all the relevant evidence and testimony that both sides had to offer, the Jury determined exactly this, finding that Ms. Olszewski acted with both legal *and* actual malice in her two Virginia claims. In other words, Ms. Olszewski was found to have had a sinister or corrupt motive. Now more than ever, Ms. Olszewski has no right to continue her course of conduct.

***Public Interest.***  Representatives of the general public, the Jurors, determined Ms. Olszewski's behavior to be malicious. Accordingly, it is in the public interest that such behavior be stopped. The public interest lies with justice. Ms. Olszewski should be blocked from further

injuring Mr. Cardin by abusing the justice system. Ms. Olszewski cannot and will not be stopped by means other than injunctive relief. The Court's issuance of injunctive relief is, not only necessary, but plainly within the public interest.

### 3. The Scope of the Injunction and the Safe Distance Rule.

The proposed language will hopefully enjoin Leah Olszewski from making further claims against Erik Cardin based on the allegations described in his Second Amended Complaint. There is a parallel here to the "safe distance" rule, which posits in a business setting that "once a company commits an unfair business practice it 'should thereafter be required to keep a safe distance away from the margin line.'" See *Osem Food Indus. Ltd. v. Sherwood Foods, Inc.*, 917 F.2d 161, 164 n.4 (4th Cir. 1990).

***Allegations Within Second Amended Complaint.*** In Plaintiff Cardin's Second Amended Complaint, he summarizes his allegations as such:

- Leah Olszewski has repeatedly made statements and criminal allegations about Erik J. Cardin.

- She has abused the courts and the legal system, and likely will continue to do so unless stopped by the courts.

More specifically, Mr. Cardin alleges the following as "Material Facts":

**The Barrage of False Statements and Allegations.**

¶ **8.** Ms. Olszewski has claimed:

"SMSgt (Ret.) Cardin had assaulted me 5 times, including strangulation in July of that year, … On October 11, 2017 SMSgt (RET) Cardin committed the worst assault on me yet. Knowing I was pregnant this evening he, among other things, pulled back both of his legs and kicked me with the full force of both of his feet in the abdomen, so hard I flew off our bed and into closet doors, knocking them off their tracks. He then grabbed and pulled my hair, not allowing me to leave, took my phone, and then grabbed and pushed me down at the top of stairs as he often did …"

9

And she continued,

> "He kicked me in the abdomen with both of his feet. He knew I was pregnant. I called the police, and he ran from the house. Over the next three days, I miscarried."

Ms. Olszewski's accusations were made multiple times, most recently in her September 18, 2019 Congressional Hearings testimony, which with her permission and encouragement was republished in the October 23, 2019 (updated December 14, 2019) edition of *The Huffington Post*, and also broadcast on ABC News and on NPR Radio.

¶ 9. Ms. Olszewski continues her accusations against Erik Cardin:

> "SMSgt (Ret.) Cardin continues to threaten me, retaliate, and follow me with no consequence while I continue to live in fear and spend time, money and energy to stay safe and get away from him."

Again, shown to be an untrue statement at trial.

**A Relationship "that ended badly" from Northwest Florida to Vacaville, California.**

¶ 18. In an extended Text session on November 11th, Ms. Olszewski threatened Erik Cardin:

> *"Now im going to support the DA so youll end up with midemanor*
> *and no guns the rest of ur days.*
> *And im going to file with the air force.*
> *So osi and jag will know.  And youll be*
> *reprimanded.  This is what u asked for*
> *By not being capable of being a man*
> *And a decent human being*
> *And u can forget unc and Syracuse"*

Twelve days later she seethed in her November 23, 2017 email, "I hate you," then "And now, you'll get exactly what you asked for …"  She continued in her email, "you don't have the balls …," that he is "insecure and immature," and "You ABANDONED me …"  She added, "And now you're getting it.…all the stinky things that are coming your way …" These threats

would be Leah Olszewski's manual for her Fury Campaign against Erik Cardin for the next 2½ years.

**Complaints Filed with Air Force Family Advocacy and AF Inspector General.**

¶ 26. The Air Force investigated. Hearings were held on December 19, 2017 and January 25, 2018 before the Central Registry Board at Travis AFB. The Board concluded that there was no basis for Ms. Olszewski's claims of physical and emotional abuse by SMSgt (Ret.) Cardin.

**Ms. Olszewski's April 2018 Claims to the Air Force OSI.**

¶ 34. Still brimming with anger with Erik Cardin for leaving the relationship and equally angry at the Air Force, Ms. Olszewski alleged in a report filed on April 13, 2018 with the Air Force Office of Special Investigations ("OSI") that she was pregnant back in October 2017, and that SMSgt (Ret.) Cardin assaulted her and caused a miscarriage. Six months had passed since the alleged incident at their Vacaville residence. This was her first mention of an alleged pregnancy to the Air Force.

**Santa Rosa County, Florida Protective Order.**

¶ 40. Ms. Olszewski returned to Northwest Florida in January 2018.

¶ 41. Ms. Olszewski filed in August 2018 for a Protective Order in Santa Rosa County, Florida. This was ten months after Erik Cardin left the relationship. Even though Erik Cardin was not living in Florida, Ms. Olszewski alleged that she was fearful that he might return to Florida because he owned a house in the area.

¶ 42. Ms. Olszewski's basis for her Petition for a Protective Order in Florida was her police report from October 2017 in Vacaville, CA

¶ **43.** The Santa Rosa County (Florida) Court conducted on September 12, 2018 an evidentiary hearing on Ms. Olszewski's Petition. After the full hearing, the Florida Court found that there was insufficient evidence supporting Ms. Olszewski's claims.

**Ms. Olszewski Files for Protective Order in Solano County, California.**

¶ **45.** Furious over the Florida Court's denial of her Petition for a Protective Order, Ms. Olszewski filed one week later on September 20, 2018 for a Protective Order in Solano County, California.  This was approximately one month after the OSI Report and after the Air Force SJA had rejected her claims.

¶ **46.** Her California Petition asserts that she was living and working in Vacaville, California, and that she feared Erik Cardin would come after her.  The home address she used when filing the California petition was her Florida address.

¶ **47.** A hearing on Ms. Olszewski's Petition was set for October 12, 2018.  In a Facebook post that day, Ms. Olszewski referred to Erik Cardin as "the evil, likely mentally ill sociopath."  She sought recommendations for a "killer attorney."

¶ **48.** Erik Cardin appeared for the hearing represented by counsel.  Ms. Olszewski was without counsel and said she was not prepared to go forward.  The Court rescheduled the hearing for a date four months later.

¶ **49.** In February 2019, when the matter came before a Commissioner in Solano County, California, it was pushed back to May 17, 2019 for a full trial.  But in May 2019, the matter was continued yet again.  The California Court continued the Protective Order hearing because Ms. Olszewski had signed a sworn affidavit before a Virginia Magistrate in which she accused Erik Cardin of stalking her.

**Virginia Protective Order and Ms. Olszewski's Stalking Claims.**

¶ 58. Ms. Olszewski claimed that she saw Erik Cardin drive by on April 30, 2019 when she was in the Eisenhower Avenue area in Alexandria, Virginia.

¶ 59. Undeterred by the string of rejections by the Air Force, various investigations and Boards that found against her, and by the Florida Court's dismissal of her Petition for a Protective Order, Ms. Olszewski brought new claims to the Alexandria Police Department of Erik Cardin stalking her. The Alexandria Police determined that her claims did not support stalking charges.

¶ 60. Unsuccessful in Alexandria, on May 7, 2019 Ms. Olszewski appeared before a Virginia magistrate seeking a Protective Order and again making stalking claims against SMSgt (Ret) Cardin. She made a sworn statement to the Magistrate.

¶ 61. Ms. Olszewski included in her statement to the Virginia magistrate that the temporary California Protective Order from California was still in place, but she did not explain that the matter lingered because three times it had been continued at her request. She also made no mention to the Virginia magistrate that the Santa Rosa County, Florida Court had denied her petition filed in that jurisdiction after a full evidentiary hearing, and she said nothing about the Air Force investigations, including the in-depth OSI investigation and Report, and the Air Force SJA action that rejected her claims.

¶ 62. The Virginia magistrate listened to Ms. Olszewski. Erik Cardin had not even been advised of the appearance. The Virginia Temporary Protective Order was issued along with a warrant for his arrest on Ms. Olszewski's stalking charges.

¶ 63. Erik Cardin was notified of the warrant.  He turned himself in to the Alexandria police.  He was locked-up in the City jail for five days.  It was several days before his Virginia counsel procured his release.

¶ 64. A General District Court hearing was set in the Alexandria Courts.

¶ 65. The June 11, 2019 Alexandria Court hearing went as the prior hearings did – this time the prosecution filed a *Nolle Prosequi* dismissing the criminal charges.

¶ 66. But again Ms. Olszewski was not deterred.  She continued her pursuit of the Protective Order as a civil matter.

¶ 67. The Protective Order came before the Alexandria General District Court on July 10, 2019.  After hearing the evidence, the Alexandria Court denied Ms. Olszewski's Petition and dismissed the matter.

¶ 68. She appealed the General District Court decision to the Circuit Court.  When the matter came before the Alexandria Circuit Court on November 1, 2019, Ms. Olszewski's counsel appeared to inform that Court that the appeal was being withdrawn at Ms. Olszewski's request.

**October 31, 2019 Criminal Complaint in Arlington County, Virginia.**

¶ 69. The evening before Mr. Olszewski was to be in Alexandria Circuit Court on her appeal of the General District Court's dismissal of her civil claims, she swore out a Criminal Complaint against SMSgt. (Ret.) Cardin in Arlington seeking his arrest and incarceration.

¶ 70. Ms. Olszewski alleges in her October 31st Criminal Complaint that "In July & August 2019, Erik Cardin … filed a complaint with my employer."  This, she claims, is harassment.  Ms. Olszewski continues that "This harassment is a violation of my protective order …"  She used the Criminal Complaint to obtain yet another warrant for Erik Cardin's arrest.

¶ 71. The Protective Order Ms. Olszewski refers to is the Solano County, California order from 2017. Again, she made no mention of the Florida Court's denial of her Petition after hearing the evidence, and no mention of the litany of failed claims she had made against SMSgt (Ret.) Cardin.

¶ 72. When Ms. Olszewski's attorney appeared on November 1, 2019 in the Alexandria Circuit Court on her behalf to dismiss her appeal of the General District Court's dismissal of her claims, he made no mention that the evening before Ms. Olszewski had filed in Arlington County her fifteenth complaint against SMSgt (Ret) Cardin. SMSgt (Ret.) Cardin and his attorney were present and were prepared to try the appeal.

¶ 73. SMSgt (Ret.) Cardin learned of Ms. Olszewski's Arlington criminal complaint against him when two FBI agents came to his house in Maine.

¶ 74. In February 2020, upon learning of the October 31, 2019 Criminal Complaint and Warrant, SMSgt (Ret.) Cardin returned from Maine to Virginia, turned himself in to the Arlington Police. He was released on his own recognizance to return for trial. Trial on Ms. Olszewski's latest claims was set for late March 2020, but then continued to May 2020.

¶ 75. When Ms. Olszewski's latest criminal claims came before the Arlington County Court, the prosecutor entered another *Nolle Prosequi*, which ended the matter unfavorably for Ms. Olszewski.

¶ 76. During this episode, Ms. Olszewski made no mention of her many claims and complaints filed regarding SMSgt (Ret.) Cardin, no mention of the Florida Court's dismissal of her claims after a full hearing, no mention of the *Nolle Prosequi* dismissing her prior criminal claims, and no mention of the Alexandria Court's dismissal of her related civil claims and of her plans to dismiss her appeal.

**Back to Solano County, California.**

¶ 77. Still outstanding is Ms. Olszewski's Petition for a Protective Order in Solano County, California.  Three times the trial on this has been continued at Ms. Olszewski's request.

**Booz Allen Hamilton Employment and Syracuse MBA.**

¶ 80. After losing his Booz Allen job (likely because of Leah Olszewski's interference) and unable to find comparable employment in the DC area, and dealing with the Virginia courts and the continued harassment from Ms. Olszewski, Erik Cardin moved to Maine in June 2019. He worked in Maine at a substantially lower salary, but not in a position that required a security clearance.  With the current economic downturn and his NCIC Database profile thwarting any job search, he is now unemployed.

¶ 81. Starting in July 2018, Erik Cardin enrolled in the online MBA program at Syracuse University.  Ms. Olszewski tracked down his admission to Syracuse, and she gave a statement to the university that she was a victim of his domestic abuse and assault, and she filed a formal Title IX complaint against Erik Cardin.  When her efforts stalled, she wrote directly to the University President imploring him to expel Erik Cardin from the University.

**Consequences of the Public False Statements and Allegations.**

¶ 83. As a direct result of Ms. Olszewski's series of allegations and her continued claims made against him to the Air Force, in her filings in California and in Florida, Erik Cardin has been financially harmed and his reputation severely damaged.

*Applicability of Safe Distance Rule.* In a business setting, the Safe Distance Rule is a broad equitable remedy that allows courts to create a zone of safety around trademark holders victimized by counterfeiting or other unlawful use of the marks. It requires courts to draft injunctive relief broadly enough to ensure that a past infringer will not have the opportunity

to infringe an owner's rights in the future. *See Dominic's Rest. of Dayton v. Mantia,* 2009 U.S. Dist. LEXIS 120098, *3-4 (S.D. Ohio Dec. 3, 2009).

**4. Conclusion.**

The Court should create a zone of safety around Erik Cardin, who has been maliciously prosecuted by Leah Olszewski. The Jury has found her to do so with corrupt motives. The Court should protect Erik Cardin by issuing a permanent injunction, barring Ms. Olszewski from making further claims based on the allegations described above from the Second Amended Complaint. Such relief would prohibit her from harming Erik Cardin in the future, as she has done relentlessly in the past 2½ years.

Respectfully submitted,

**ERIK J. CARDIN**

By Counsel

By: \_\_/s/ James S. Kurz_____
James S. Kurz (VSB #16610)
**REDMON, PEYTON & BRASWELL, LLP**
510 King Street, Suite 301
Alexandria, VA 22314
Tel: (703) 684-2000/ Fax: (703) 684-5109
Email: JKurz@RPB-law.com

17

## CERTIFICATE OF SERVICE

I certify that a true copy of this pleading was filed on this the 30th day of July 2021 via the Court's ECF System, which filing is valid service on all counsel record.

                                        __/s/ James S. Kurz_____
                                        James S. Kurz (VSB #16610)
                                        Tel: (703) 684-2000/ Fax: (703) 684-5109
                                        Email: JKurz@RPB-law.com